### No. 9705.

### The State of Louisiana vs. R. T. Backarow.

Section 805 R. S. denounces 1st, The forcible seizing and carrying a person against his will out of the State. 2d, The forcible seizing and carrying a person against his will from one part of the State to another; and 3d, The imprisoning or secreting a person without authority of law. It is not necessary to charge that the person imprisoned or secreted was forcibly seized and imprisoned or secreted.

It is sufficient to charge in the language of the Statute that the person was carried from one part of the State to another and not from one parish to another, and proof that the carrying of the person was from one part of a parish to another, or from part of a city or town to another, will sustain the charge in the bill on this count. This Court cannot determine whether the evidence does or does not justify the verdict.

APPEAL from the First District Court, Parish of Caddo. *Hicks*, J.

---

*M. J. Cunningham*, Attorney General, for the State, Appellee:

A.—An indictment charging that the prisoner "with force and arms, wilfully, forcibly, unlawfully and against her will, the person of Mrs. Inez Watkins, a married woman, did

seize, secrete and convey whilst in transit from Claiborne parish, in said State, to the State of Texas, and whilst in the city of Shreveport, State of Louisiana, from the depot of the Vicksburg, Shreveport and Pacific Railroad Company, in a hack waiting at said depot ror that purpose, forcibly and against her will, to the house of ill-fame of Fannie Roos in said city," etc., does not charge the Common Law crime of abduction as defined and denounced by the Statutes of England and the American States. 24 and 25 Vict. C. 100. S. 53 ; Wharton's Cr. L. 8th ed. § 586 ; Bishop on Statutory Crimes, §§ 616, 617, 619, 620, 622; Desty's Am. Cr. L. § 136, b. 137, a. 138.

B—The indictment charges the offense laid down in Section 805 R. S. This section denounces three separate and distinct crimes: 1st. The forcible seizing and carrying of a person out of the State. 2d. The forcible seizing and carrying of a person from one part of the State to another. 3d. The imprisonment or secretion of a person without authority of law.

C—In an indictment under this section no specific intent need be alleged. The general criminal intent presumed to be involved in the commission of all crimes is implied in this one, but "intent" is not of the essence.

D—The word "forcible" is necessary to the description of the two first two acts, as without it the Statute would not denounce a wrongful act. Differently with the last.

It charges an aggravated form of false imprisonment.

Imprisonment is an unlawful restraint put upon one's personal liberty. Coercion is necessarily involved in the act. Therefore, force being included in the term, it is unnecessary in the indictment to allege a "forcible false imprisonment."

F—The indictment need not allege that the carrying was from one to another parish of the State. Any two points in the State alleged in the indictment is sufficient.

G—The indictment sufficiently lays the venue in the parish of Caddo as to both counts.

H—The Supreme Court cannot review questions of fact.

I —The Supreme Court cannot determine a question of law necessarily based upon certain facts, unless the evidence is properly presented to them for review. State vs. Redwine, 37 Ann. 780.

J —The last count charges the offenses laid down in both Sections 805 and 796, R. S.

*M. S. Crain,* District Attorney, and *W. H. Wise* on the same side.

*John H. Hicks, M. C. Elstner* and *R. J. Looney* for Defendant and Appellant.

The opinion of the Court was delivered by

TODD, J.   The defendant appeals from a sentence of three months imprisonment in the parish jail.

He was tried and convicted under an indictment which charged that he, the accused (quoting): "with force of arms wilfully, forcibly, unlawfully and against her will, the person of Mrs. Almez Watkins, a married woman," did seize, secrete and convey whilst in transit from Claiborne parish in said State, to the State of Texas, and whilst in the city of Shreveport, State of Louisiana, from the depot of the Vicksburg, Shreveport and Pacific Railroad Company, in a hack waiting at said depot for said purpose, forcibly and against her will to the house of ill fame of Fannie Roos in said city, conducted and known as the Fannie Roos House, or otherwise as the Lewis House, with intent for-

cibly and against her will the said Almez Watkins to abduct and secrete."

The prosecution was instituted under Sec. 805 of the Revised Statutes of 1870, which reads:

" Whoever shall *forcibly seize* and carry out of this State, *or* from one part of this State to another, *or* imprison *or* secrete any person without authority of law, and all persons aiding, advising *and* abetting therein, on conviction shall be imprisoned," etc.

There was a motion to quash the indictment on the following grounds:

1st. That the indictment charges defendant with abduction, a crime unknown to the laws of Louisiana.

2d. That there is no penalty fixed by the laws of the State for abduction.

3d. That the indictment does not charge that the abduction was for any unlawful purpose, either for the purpose of lucre or prostitution.

4th. That the second count does not charge th it the defendant forcibly seized or detained the person mentioned in said bill and in consequence no offense is charged.

*a.* The three first grounds may be considered and disposed of together.

Whether the indictment charges the crime of abduction or not, or whether there is any penalty prescribed for such offense, or whether abduction is a crime under our laws, is immaterial, if the acts charged in the indictment constitute an offense under the laws of the State. We have critically compared the charge in the indictment with the language of the Statute referred to, and by whatever name we may call the crime therein denounced, whether "abduction," "kidnapping," or other name, there can be no doubt that the averments contained in the indictment do make out the precise statutory offense embraced in the section quoted above.

Nor does the law prescribe that any unlawful purpose, whether of lucre or prostitution, shall be expressed or mentioned in the indictment, or shall in fact exist or prompt the acts denounced, in order to complete or make up the offense.

*b.* The indictment does charge that the accused did forcibly seize the person therein named. It was not necessary to charge that he did forcibly imprison or detain—both of those words or terms necessarily imply force (Bishop Cr. Law, vol. 1, sec. 555), and there is nothing in the language of the section that requires that those terms and the acts they define should be thus qualified.

## II.

There was a motion in arrest of judgment filed. This motion embraced, substantially, the same grounds as the motion to quash, together with the following additional ones, which we quote:

"The indictment charges defendant with no offense under Sec. 805, R. S., in this: That it does not charge that defendant forcibly seized and carried away any person out of the State of Louisiana into another State, or from Caddo parish, in said State, into another parish in said State, or from one part of said State to another part of said State."

This ground is evidently suggested by the crime of kidnapping, as constituted and defined by the common law. One of the elements of that crime was, that the party abducted or kidnapped should be carried away out of the realm of England into some other country. The counsel for defendant seem to deduce from this—but not logically as we conceive—that since the common law offense has been so modified by the Statute referred to as not to make it essential to the constitution of the crime that the carrying away of the person should be from one country to another, or from one State to another, but may be committed by the carrying from one part of the State to another part of the State that the part or parts of the State referred to mean the political or geographical divisions of the State.

Where the words of a Statute are plain and unambiguous it is not at all necessary to resort to the history of similar laws or Statutes to arrive at its meaning—nor is permitted to invoke those rules of construction which are provided as a means or guide to clear away ambiguities or obscurities in a law. If its language is plain and clear, that language alone is to be consulted.

We find not the least obscurity in the language of the Statute under consideration. It denounces, 1st, the act of forcibly seizing and carrying a person out of the State; 2d, the forcibly seizing and carrying a person from one part of the State to another part of the State; and 3d, the imprisonment or secreting a person without lawful authority.

It was intended to secure the personal liberty of the citizen. The terms, from one part of the State to another, has a broad signification and was evidently so intended. If the law maker intended that it was the removal from one parish of the State to another parish of the State that constituted the offense, it seems to us it would have been so declared. It was intended to give it a broader sweep with a view to provide ampler individual protection.

It strikes us that it is just as gross a violation of personal liberty to seize and drag a person from one part of a parish to another, from one

place to another, or from one house to another, even if in the same parish, town or city, as it would be to carry him out of the parish or even out of the State. Nor can the definitions in dictionaries or the principles and rules of philology make the matter plainer.

The Statute declares: "Whoever shall forcibly seize and carry * * from one part of the State to another." The indictment charges that the defendant did so seize and carry the person named therein from the railway depot in the city of Shreveport to a certain house named and described in said city. This was sufficient, and it was clearly from one part of the State to another, within what we conceive to be the clear meaning and intendment of the law.

It is a construction that addresses itself to common sense and common justice, and we have no doubt of the correctness of our conclusion.

III.

In the motion for a new trial it was urged that the evidence was insufficient to convict, and especially to show any forcible seizure of the person or any intent to carry the person against her will to the house of ill-fame designated, and in the bill of exceptions taken to the overruling of the motion for a new trial portions of the evidence of the person against whom the offense was alleged to have been committed is copied and pointed out to show the failure on the part of the State to make good the charge.

We have said once and over again that we cannot consider such evidence, even if brought up in this manner. It is the sole province of the jury to deal with and consider the evidence adduced on the trial of the case and bearing on the guilt or innocence of an accused. A careful reading of the Nelson case, cited to sustain the counsel's pretensions in this respect, will be found to be direct authority against it. If a jury will convict on insufficient evidence or against the evidence, this Court is without power to afford relief, unless the error of the jury in this respect has been caused or is connected with the charge of the trial judge seasonably excepted to.

Judgment affirmed.