(102 So. 478)

No. 26810.

## STATE v. DUNNINGTON et al.

(Dec. 1, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Obstructing justice ⬤⟳3—Statute held broad enough to include any legal order, written or verbal, issued by any court of competent jurisdiction.**

Rev. St. 1870, § 865, as amended and re-enacted by Act No. 11 of 1882, punishing the offense of resisting an officer while serving an order of the court, is broad enough to include any legal and valid order, written or verbal, issued by any court of competent jurisdiction.

2. **Obstructing justice ⬤⟳3 — Whether party can be prosecuted for having resisted execution of verbal order determinable by particular facts of each case.**

Whether order must be in writing, or whether party can be prosecuted under Rev. Stat. 1870, § 865, as amended and re-enacted by Act No. 11 of 1882, for having resisted execution of a verbal order of court, is to be determined by particular facts of each case.

3. **Contempt ⬤⟳56—Judge's order of arrest for contempt in his presence may be given from bench or sheriff's office.**

Where defendants had committed a breach of peace and were guilty of gross and flagrant contempt of the dignity and authority of court in presence of the judge, he had authority to arrest offenders himself, or to order deputy sheriff to do so, it being immaterial whether order was given from the bench or sheriff's office.

4. **Contempt ⬤⟳56—Have full authority to arrest for any offense committed in their presence.**

Judges have full authority to arrest, or to order the arrest, for any offense committed in their presence.

5. **Obstructing justice ⬤⟳16—Conviction not sustainable where no evidence tending to prove any resistance to arrest.**

Verdict of conviction in prosecution for resisting an officer was not sustainable, where there was no evidence tending in remotest degree to prove any resistance to arrest.

6. **Criminal law ⬤⟳1134(3) — Supreme Court has jurisdiction of questions of law.**

Where question is as to whether there is any evidence at all on which verdict of convic-tion can be predicated, question of law is presented of which Supreme Court has jurisdiction.

7. **Criminal law ⬤⟳1159(2)—Supreme Court will not pass on sufficiency of evidence to convict.**

Supreme Court will not pass upon or determine sufficiency of evidence to convict, however manifest such insufficiency may appear to the court.

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Robert S. Ellis, Judge.

John Dunnington, Sr., and others, were convicted of resisting an officer, and they appeal. Verdict annulled, and case remanded.

Purser & Magruder and Shelby S. Reid, all of Amite, for appellants.

Percy Saint, Atty. Gen., M. J. Allen, Dist. Atty., of Amite, and Percy T. Ogden, Asst. Atty. Gen. (J. Bernard Cocke, of New Orleans, of counsel), for the State.

THOMPSON, J. John Dunnington and his two sons, Elmer and John, Jr., were charged by information of the district attorney with the crime of resisting an officer while executing an order of court. On a trial by a jury of five, John, Jr., was acquitted, and the other two were convicted. The two were given the maximum term of punishment in the penitentiary as prescribed by the statute.

The information reads as follows:

"* * * That one John Dunnington, Sr., Elmer Dunnington, and John Dunnington, Jr., all being present, acting together, aiding and assisting each other, * * * willfully, illegally and feloniously did resist, oppose, and assault Joe Johnson, Joe Mixon, and Dave Story, all duly qualified and authorized deputy sheriffs * * * while said deputy sheriffs were attempting to execute an order of Hon. Robert S. Ellis, judge of the Twenty-Fifth district court * * * to arrest said John Dunnington, Sr., Elmer Dunnington, and John Dunnington, Jr., for fighting and disturbing the peace in the courtroom while court was in session. * * *"

The statute under which the charge is laid, being section 865 of the Revised Stat-

utes of 1870, as amended and re-enacted by Act 11 of 1882, reads as follows:

"That whoever shall illegally resist, oppose or assault any officer of this state, while serving or attempting to serve or execute the process, writ or order of any court, or shall assault and beat or wound any officer or other person duly authorized, while serving or executing any process, writ or order aforesaid, shall on conviction be imprisoned not exceeding two years at hard labor or otherwise, or fined not exceeding one thousand dollars, or both at the discretion of the court."

The record presents three bills of exception. The first is to the refusal of the court to give a requested charge; the second to the charge as given by the court, which was to the reverse of the one requested; and the third bill was reserved to the overruling of a motion for a new trial.

As the first two bills relate to the same subject-matter, we will consider them together. After the court had finished the regular charge to the jury, counsel for the defendant requested the court to charge that the words, "order of any court," contained in the statute meant a written order, addressed to the officer at the time, and not a verbal one. The court declined to give the charge, as it had already in the general charge informed the jury that the words, "order of any court," meant a verbal order as well as a written one.

[1] The precise question has never been considered by this court so far as we have been able to find. However, considering it as an original proposition, we are unwilling to go so far as to hold that in no case can a prosecution be maintained under the statute in question unless the order of court, the execution of which is willfully opposed and resisted, is shown to have been in writing. The statute does not read that way. There is no qualification of nor restriction placed upon the word "order." And there is certainly nothing in the language of the statute that would, by any fair and reasonable implication, indicate an intention of the lawmaker to denounce only as an offense the resistance of the execution of a written order. The word "order" as used in the statute is broad enough to include any legal and valid order, written or verbal, issued by any court of competent jurisdiction.

There are many orders issued by a court in the regular course of judicial procedure in civil matters which are required to be in writing. As an illustration, we might mention an order and writ of injunction, provisional seizure, attachment sequestration; also an execution, or fi. fa. issued on a final judgment and an order or writ of ejectment. These all are imperatively required to be in writing. If an officer, in the proper and orderly execution of any of such writs or orders, were illegally opposed, resisted, or assaulted, undoubtedly the state would be required to allege and to prove as an essential element of the prosecution, that the writ or order was in writing.

On the other hand, there are many instanter orders made and issued in the course of criminal procedure and in the trial of criminal cases which are not required to be reduced to writing before being put into execution. Among such it is sufficient to mention the order which is usually issued from the bench on request of litigants to place the witnesses under sequestration. No one, we imagine, would contend for a moment, that in order to carry out such an order from the court, the sheriff would have to be armed with the command in writing. Nor would any one dispute the fact that the sheriff would be answerable for contempt of court should he refuse to execute the order because it was not in writing.

And again, suppose a riot or a fight occurs in open court, or an assault is made upon the officers of the court, or the witness on the witness stand is attacked, would any one doubt the authority or the duty of the judge to issue his verbal order to the sheriff to arrest forthwith the offending parties?

Would any one doubt the validity and legality of such an order, and would any one question the right or duty of the sheriff immediately to make the arrest?

The authority of the judge in such matters and the legality of the orders thus rendered being conceded, no valid and sufficient reason is or can be suggested why the one who would resist or oppose the execution of such an order by the sheriff would not be answerable for the offense denounced by the statute under consideration.

[2] After all is said, the question as to whether the order must be in writing, or whether a party can be prosecuted under the statute for having resisted the execution of a verbal order, is to be determined by the particular facts of each case. If the subject-matter in which the order is issued is such as to authorize a verbal order, then a legal and valid verbal order answers the purpose and intention of the statute.

A mere reference to the pertinent facts brought up under the bill of exception and the per curiam of the court will serve to show that the order, the execution of which the defendants were charged with resisting, was a perfectly legal and valid one.

The court was in session, and had just finished the trial of a rule and had ordered Elmer and John Dunnington, Jr., to give a bond to keep the peace for 12 months. The rule had been issued at the instance of Ed Bickford, with whom the Dunningtons had had a previous difficulty. When the order for the peace bond was issued, Elmer Dunnington arose and made an attack upon Ed Bickford in open court. The judge at once ordered the deputy sheriff to arrest and to take into custody the said Elmer Dunnington, and the deputy did so, pulling Elmer off of Bickford. John Dunnington, Sr., then renewed the assault on Ed Bickford, grabbing him by the hair of his head and beating his head against the floor. The judge from the bench called on the attorneys and bystanders present in the courtroom to interpose and not to let John Dunnington, Sr., kill Bickford.

There being no response to the request, the judge descended from the bench, went to the parties and took hold of Dunnington and pulled his right hand loose from Bickford's hair. Dunnington then caught the hair of Bickford with his left hand and continued pounding Bickford's head against the floor, at the same time applying the vilest of epithets to the judge. There was only one deputy sheriff in the court, and he had taken charge of Elmer Dunnington.

Having obtained no assistance from the attorneys and bystanders, and being unable to pull John Dunnington off of Bickford and to restore order in his court, the judge left the courtroom and went downstairs to the sheriff's office, where he ordered two deputies to proceed at once to the courtroom, and to arrest John Dunnington and John Dunnington, Jr. On his way back to the courtroom the judge met the deputy who had arrested Elmer Dunnington carrying him towards the jail, and in the courtroom he found that the two deputies sent from the sheriff's office had arrested John Dunnington and John Dunning, Jr., and were carrying them out of the courtroom, "commanding them," as the judge says, "to come on."

[3] From the foregoing facts, it is clear that Elmer Dunnington and John Dunnington, Sr., had committed a breach of the peace, and were guilty of a gross and flagrant contempt of the dignity and authority of the court. The offense had been committed in the presence of the judge. The judge, under such circumstances, had the unquestioned authority to arrest the offenders himself or to order the deputy sheriff to do so; it is immaterial whether the order was given by the judge from the bench or from the sheriff's office. The judge had left the bench only temporarily for the purpose already stated. He had not adjourned his court, and it might

well be said that when he rushed to the sheriff's office to secure the assistance of the deputy sheriffs, the court remained in session and the judge still occupied the bench. If not actually, certainly constructively.

[4] The Constitution of this state makes all judges conservators of the peace throughout the state, and no one will seriously contest the fact at this date that they have full authority to arrest or to order the arrest for any offense committed in their presence. This authority under the same circumstances is conferred even upon private citizens.

Mr. Bishop, in his work on Criminal Procedure, vol. 1, p. 98, says:

"In early times, every county in England had by the common law its conservators of the peace."

"Under the statute of 1327, 1 Edw. III, c. 16, any one or more justices have, not only the ancient power touching the peace which the conservators of the peace had at the common law, but also that whole authority which the statutes have since added thereto. He has the power thus to apprehend one whom he has just cause to suspect of a felony which he knows to have been committed; since even a private person could do the same."

"Therefore, since every statute must be interpreted as carrying with it what will make its provisions effectual, if legislation gives a justice of the peace jurisdiction over any offense, or power to require a person to do a certain thing mentioned in the statute, by implication it gives a power to the justice to grant his warrant to bring the person accused of such offense, or the person that is compellable to do the thing ordained by the statute."

"It has always been deemed a leading function of this officer to preserve the peace."

"Hence, in the words of Lord Mansfield, he may commit without complaint, if he has reason to apprehend the peace will be broken though not actually broken."

"The statute of 34 Edw. III, c. 1, in terms conferred upon these conservators of the peace the power to restrain the offenders, rioters, and all other barrators, and to pursue, arrest, take and chastise them according to their trespass or offence."

"If therefore, a felony or other breach of the peace is committed in the presence of the justice, he may, as well by verbal order as by warrant, command the arrest of the offender. And the persons so commanded may pursue and arrest the offenders in his absence as well as presence."

"The magistrate in his court, if an offence is there committed in his presence, may verbally order the offender into custody; no warrant is necessary."

Our conclusion is that such a verbal order as here involved, the same being legal and valid and one which the judge had the authority to issue, comes clearly within the intent and meaning of the statute, and the judge properly so ruled in refusing the requested charge and in giving the charge as he did.

The motion for a new trial presents, in our opinion, a much more serious and important question, and that is, whether under the admitted facts the two defendants have committed the particular crime with which they are charged. The motion for a new trial alleges:

" * * * That all of the evidence taken together failed to disclose any intent on the part of movers or either of them, to resist any officer of the court, the evidence showing that under stress of circumstances, your movers being enraged, lost control of their temper and in open court, in presence of the presiding judge, made a violent assault upon Ed Bickford, but did not make any resistance to the officers when they were arrested for said assault and for disturbing the peace and quiet of the court, their entire efforts being to inflict physical chastisement upon Bickford and not at any time to resist the process of the court, any warrant, or any order of court."

The bill of exception and the per curiam of the judge disclose all the facts in connection with the disturbance in the courtroom from the very beginning of the difficulty down to and including the arrest of the Dunningtons and their removal from the courtroom by the arresting officers. These facts show conclusively that the two defendants were guilty of a breach of the peace and a contempt of court, altogether reprehensible and indefensible, but there is a total absence of a scintilla of evidence, there is lacking a single fact, to show that the defend-

ants in any manner or form resisted or opposed the officers when they sought to arrest them under the order of the court, or that they made any assault upon said officers at any time.

Not only is there no evidence at all to prove the particular crime charged against the defendants, but the statement of the facts in the bill of exception, elaborated and amplified by the judge, excludes the possibility of there being any fact or any evidence whatever to show the guilt of the accused of the crime charged. The only difficulty which the deputy sheriff, who arrested Elmer Dunnington, had with him, was in pulling him off of Bickford, but the action of Elmer Dunnington was directed exclusively towards Bickford and not against the deputy. When the deputy separated the combatants, Elmer Dunnington submitted to the arrest and was carried off to jail.

The only resistance, if it can possibly be so characterized, that the elder Dunnington committed, was in refusing to let up on Bickford at the command and interference of the judge. When the deputy arrived from the sheriff's office, the elder Dunnington submitted to arrest and was led by the deputy from the courtroom.

[5] It is very clear from the facts stated that there was no evidence tending in the remotest degree to prove any resistance to arrest.

In the case of State v. Scott, 123 La. 1086, 49 So. 716, 24 L. R. A. (N. S.) 199, 17 Ann. Cas. 400, the court, quoting from a Texas case (Pierce v. State, 17 Tex. App. 240), said:

"As to what constitutes an opposition to the execution of a warrant or resistance of an officer, the jury are charged that any act willfully done with intent to deter or prevent any officer from the performance of his duty, and prevent him in making the arrest, would come within the meaning of the statute."

And this court in the same case said:

"If an officer is deterred from making the arrest by the mere announcement of an intention not to be arrested, he may be said to have been dissuaded, but cannot be said to have been actually opposed or resisted; and the statute provides only for the latter."

[6] It is not a question of the sufficiency of the evidence to convict in this case, but the question as to whether there was any evidence at all on which a verdict of conviction can be predicated. This presents purely a question of law of which this court has jurisdiction.

[7] This court has zealously, uniformly, and consistently adhered to the rule that it will not pass upon nor determine the sufficiency of the evidence to convict, however manifest such insufficiency may appear to the court. State v. Rogers, 152 La. 906, 94 So. 439; State v. Tyler, 150 La. 132, 90 So. 538.

But where there is no evidence at all of a fact essential to a conviction, it becomes a question of law which this court will consider.

"If an accused appears to have been convicted without any evidence at all having been produced against him, literally none at all, a question purely of law is presented on appeal." State v. Wells, 147 La. 822, 86 So. 268.

And in the case of State ex rel. Fernandez v. Perez, 151 La. 526, 92 So. 45, we said:

"If this testimony disclosed as the only fact in the case that the pistols which accused were charged with carrying concealed on their persons were found on the floor of the automobile in which they were arrested, relators would have presented a proper case for the review of the action of the judge a quo in refusing to be guided by the special instructions requested by them."

And in the case of State v. Tyler, supra, the defendant was prosecuted for embezzling a ring, and it was contended in a motion for a new trial that there was no evidence to support a verdict of embezzlement, and therefore the verdict was not responsive to the charge. The court found that there was some evidence that defendant had embezzled the ring, it being shown that the accused had

deposited a worthless check as a guaranty that he would return the ring. The court, however, said:

"If he had bought the ring for the worthless check, the crime would not have been embezzlement."

From which it follows the verdict would not have been responsive to the charge. All the facts in this case show that the defendants are guilty of an offense other than that with which they are charged, and there being no proof at all of the resisting an officer, the particular crime with which they are charged, we are constrained to set aside the verdict as having been improperly and illegally rendered against them.

The verdict and sentence are therefore annulled, and the case is remanded to be proceeded with according to law and the views herein expressed.

O'NIELL, C. J., and ROGERS and BRUNOT, JJ., concur in the decree, and ROGERS will hand down reasons.

ROGERS, J. (concurring in the decree and in part in the opinion). I concur in the decree and with the majority opinion in sustaining bill of exception No. 3, which was taken to the action of the trial judge in overruling the motion for a new trial, but I do not subscribe to the ruling on bills of exception Nos. 1 and 2, the effect of which is to hold that the statute under which defendants are prosecuted covers a verbal as well as a written order. These bills of exception were well taken, and should have been sustained.

In my opinion, it is only the resistance to the service or execution of a written order which constitutes an offense under the statute.

The statute reads, in part:

"That whoever shall illegally resist, oppose or assault any officer of this state, while serving or attempting to serve or execute the *process, writ* or *order* of any court, or shall assault and beat or wound any officer or other person duly authorized, while serving or executing any *process, writ* or *order* aforesaid," etc. (Writer's italics.)

It will be observed the statute specifies three things the resistance to the service or execution of which is made an offense, viz.: "The process, writ or order of any court."

Now, I do not think it will be seriously denied that every process and all writs emanating from a court of justice must be in writing.

"Process is so denominated, because it proceeds, or issues forth in order to bring the defendant into court to answer the charge preferred against him, and signifies the writ or judicial means by which he is brought to answer." Fitzpatrick v. City of New Orleans, 27 La. Ann. 457; 3 Bouvier, Law Dict. (Rawle's Ed.) 3392, verbo "Process."

See, also, 32 Cyc. pp. 410 to 422, inclusive.

"The word 'process,' as now commonly understood, signifies those formal instruments called writs. * * *" Black, Law Dict. verbo "Process."
"A writ is process and process is a writ interchangeably." 21 R. C. L. p. 1261.

A writ, specifically, is:

"A precept in writing, couched in the form of a letter, running in the name of the king, president or state, issuing from a court of justice and sealed with its seal, addressed to the sheriff or other officer of the law, or directly to the persons whose action the court desires to command, either as the commencement of a suit or other proceeding, or as incidental to its progress, and requiring the performance of a specific act, or giving authority and commission to have it done; any order or precept in writing issued in the name of the state or of a court or judicial officer; synonymous with process. The term generally means process in a civil suit while that in a criminal case is usually denominated a 'warrant.'" 40 Cyc. p. 2866 et seq. See Black, Law Dict. verbo "Writ."

As defined by Bouvier a writ is:

"A mandatory precept issued by the authority of and in the name of the sovereign or state for the purpose of compelling the defendant to do something therein mentioned." 3 Bouvier's Law Dict. (Rawle's Ed.) 3496, verbo "Writ."

In the practice of the courts an *order* is "any direction of a court or judge made or entered *in writing* and not included in the judgment." 3 Bouvier, Law Dict. (Rawle's Ed.) 2423; Black, Law Dict; Anderson, Law Dict.; Burrill, Law Dict. (Writer's italics.)

While every writ and process issues from the court in the shape of an order or command, it cannot be disputed that every written order does not constitute either a writ or process, and it was for that· reason, obviously, that the Legislature in enacting the statute under which defendants are prosecuted after specifying "process" and "writ" used the general term "order" to cover any precept, notice or other formal writing of the same kind, class or nature of the words previously used, but not expressly embraced by them.

"Where specific and general terms of the same nature are employed in a statute, whether the latter precede or follow the former, the general terms take their meaning from the specific, and are presumed to embrace only things or persons designated by them." State v. Fontenot, 112 La. 628, 36 So. 630.

This is an application of the familiar maxim of ejusdem generis, which is defined and explained as follows:

"When an author makes use, first, of terms, each evidently confined and limited to a particular class of a known species of things, and then, after such specific enumeration, subjoins a term of very extensive signification, this term, however general and comprehensive in its possible import, yet when thus used, embraces only things 'ejusdem generis'—that is, of the same kind of species with those comprehended by the preceding limited and confined terms. Ex parte Leland, 10 S. C. L. 460; Pulom v. Jacob Dold Packing Co., 182 F. 356, 359." 19 C. J. 1255, footnote No. 16.

And in applying the maxim especially to the construction of criminal statutes it has been said:

" 'As specified to penal statutes especially, it is only a humane doctrine, and accentuates the wisdom of the fathers when they objected to being punished for offenses which had not been declared to be offenses by the law. It observes the respective rights of the different co-ordinate branches of the government, by requiring the Legislature to enact laws and the judiciary to enforce, but not create the laws— not even by construction.' Ex parte Neet, 157 Mo. 527, 535, 57 S. W. 1025, 80 Am. St. Rep. 638 (quoting Ex parte Lingenfelter, 64 Tex. Cr. R. 30, 38, 142 S. W. 555, Ann. Cas. 1914C, 765)." 19 C. J. 1256, footnote No. 16 (c).

I do not question the right of the court to issue certain so-called verbal orders. The illustrations given in the majority opinion of the judge ordering the sequestration of witnesses or commanding the sheriff to arrest parties engaged in disturbing the peace of his court, are familiar examples. But a failure to obey these orders would constitute nothing more than contempt of court. I do not believe that it was the intention of the lawmaker that such offenders should be amenable to the drastic penalty of two years at hard labor and a fine of $1,000; nor do I believe that the statute can be given so broad a construction as to cover such offenses.

The conduct of the defendants was outrageous and indefensible, and they should be punished to the full extent of the law covering their misdeeds, but I do not think their offenses can be brought within the· provisions of Act No. 11 of 1882, amending and re-enacting section 865 of the Revised Statutes.

"Nothing is a crime under our law which is not made so by statute. The court cannot by construction make that a crime which is not expressly made so by the Legislature." State v. Fontenot, 112 La. 642, 36 So. 635; State v. Comeaux, 131 La. 931, 60 So. 620.

For these reasons I am of the opinion that the trial judge should have charged the jury as requested, that the words "order of any court" contained in the statute meant a written and not a verbal order, and that he committed an error in delivering his general charge, when he informed the jury that the order of court referred to in the statute meant a verbal order as well as a written one.