180 So. 476

**STATE v. WALL et al.**

No. 34705.

Feb. 7, 1938.

Rehearing Denied April 4, 1938.

Horace R. Reid, of Hammond, John H. Cassidy, of Bogalusa, and Frank B. Ellis, of Covington, for appellants.

Gaston L. Porterie, Atty. Gen., James O'-Connor, Asst. Atty. Gen., Bolivar E. Kemp, Jr., Dist. Atty., of Amite, and Joseph M. Blache, Jr.; Asst. Dist. Atty., of Hammond, for the State.

LAND, Justice.

The five defendants were jointly indicted for the kidnapping of one Jeff Davis, under Act No. 221 of 1932, by forcibly seizing him and carrying him from one part of the parish of Tangipahoa, state of Louisiana, to another part of the same parish, "to-wit: From the Town of Kentwood, Louisiana, in the Parish of Tangipahoa to or near a place

about two miles northwest of the Town of Kentwood, known as the Old Ellis Place."

After the jury was impaneled, but before trial, the state entered a nolle prosequi as to the defendant Herman McMillan.

The remaining four defendants were then tried, found guilty as charged, and each of the defendants was sentenced to be imprisoned in the State Penitentiary at hard labor for a term of fifteen years.

All of the defendants have appealed.

Ten bills of exceptions were reserved by defendants in the trial court. Bills Nos. 1 to 9 were reserved principally as to the admissibility of certain evidence introduced by the state, but have been abandoned, at page 20 of defendants' brief.

(1) Bill No. 10 was taken to the refusal by the judge a quo to grant defendants a new trial. The motion for new trial is founded upon the following grounds:

(a) "That the verdict rendered herein was contrary to the law and evidence.

(b) "That the facts and circumstances show clearly that the defendants herein were not guilty of the crime of kidnapping."

(2) As to the first ground of the motion, that the verdict is contrary to the law and the evidence, it is well settled by repeated decisions that the Supreme Court is without jurisdiction in criminal cases to review the facts as to the guilt or innocence of the accused, or to pass upon the credibility of witnesses, or on the weight and sufficiency of the evidence, such matters being exclusively within the province of the district judge.

(3) As to the second ground of the motion, that the facts and circumstances show clearly that the defendants herein were not guilty of the crime of kidnapping, it is the settled jurisprudence that the Supreme Court will not review the sufficiency of the evidence, *if there was any evidence at all of a fact essential to conviction.* State v. Reuter, 148 La. 245, 86 So. 782; State v. Fountain, 175 La. 221, 143 So. 55; State v. Russell, 161 La. 167, 108 So. 324; State v. Dunnington, 157 La. 369, 102 So. 478.

In State v. Johnson, 151 La. 625, at page 629, 92 So. 139, 140, it is said:

"In the recent case of State v. Tyler, 150 La. 131, 90 So. 538, the motion for a new trial was founded *upon the averment that there was no evidence to support a verdict of embezzlement* and that the verdict was therefore not responsive to the evidence. A transcript of all of the testimony heard on the trial was annexed to the bill. It was held 'not the province of this court to judge of the sufficiency of the evidence, if there was *any evidence at all,* of a fact essential to a conviction.'" (Italics ours.)

In State ex rel. Fernandez v. Perez, 151 La. 526, at page 529, 92 So. 45, 46, it is said by this court:

"In criminal cases the Supreme Court has appellate jurisdiction to review only questions of law. Questions of fact are for the jury or the judge, *and, when there is any evidence at all in the case,* their findings of fact cannot be reviewed by the Supreme Court, as relates to the guilt or innocence of the accused. The evidence of fact, although reduced to writing and made part of the record, will not be examined by the Supreme Court to the end of determining whether it authorized the conviction. If, however, an accused person appears to have been convicted *without any evidence at all* having been produced against him, *a question purely of law* is presented on appeal. State v. Nolan, 129 La. 935, 57 So. 274; State v. Wells, 147 La. 822, 86 So. 268." (Italics ours.)

In State v. Rogers, 152 La. 905, at page 906, 94 So. 439, it is said by this court as to testimony for a new trial:

"We may add that said testimony, if brought to this court, could have been useful *only if showing a total absence of evidence of guilt,* not merely an insufficiency of evidence, however manifest such insufficiency might appear to the judges of this court; and moreover that it is extremely improbable the trial judge would have convicted accused *if no evidence at all had incriminated him.*" (Italics ours.)

The testimony of the witnesses who appeared before the jury was not taken down at the trial. The facts in the case are shown by the per curiam of the trial judge to be as follows:

"Per Curiam.

"To bill of Exception Number One.

"The State proved to my satisfaction and beyond a reasonable doubt, the following facts:

"That on the night of the 22nd day of May 1937, the defendants Piney Wall and Herbert Lea, took the prosecuting witness, a negro Jeff Davis, behind a building in the

Town of Kentwood where he was struck with a pistol and generally whipped by them. The defendant Wall testified that he met this negro on the street and asked him when he was going to pay him. Wall claimed the negro owed him some three or four dollars, and while the negro had been working for Wall that he had run away and left Wall. The Negro disputed that fact that he owed Wall anything, but had agreed if Wall and Lee would release him that he would be willing to work for Wall in order to pay the three dollars, even though he did not owe it. That the two named defendants brought the negro back to the main street of Kentwood and made him get on a truck belonging to Thomas Wall, a brother of Piney Wall. The negro stayed on this truck due to the fact that he was afraid to run or leave as the defendants were close around at all times and were armed with pistols and the negro was in fear of his life, and as he stated from the stand 'he knew that the defendants had just as soon shoot him on the main street of Kentwood and would do so if he had attempted to leave.' The two defendants, Wall and Lee, were joined by the other two defendants, Foster and Wilson, at approximately 11:00 o'clock or shortly thereafter. The defendant Wall was heard to tell the negro, Jeff Davis, 'come on boy, let's get going.' All four of the defendants, together with the negro, Jeff Davis, left the Town of Kentwood in Foster's car. They took this negro some two and one half or three miles out of town of Kentwood, in the woods, where they administered a most brutal beating. The negro, Jeff Davis, was tied with his hands around a

tree and all of them beat him. Pistols were used in the beating as well as some instrument that left a broad scar all over the negro's back and legs. The negro was also stamped in the stomach and kicked. The negro was then taken by the four defendants back to Kentwood and down highway No. 51 to a point some quarter or half mile below the main street of the Town of Kentwood where the truck that they were hauling him on was driven up to the wire fence enclosing the tracks of the I. C. Railroad and the negro Jeff Davis, was carried by the defendants, Foster, Wall, and Lea and placed across the north bound track of the I. C. Railroad. The time fixed was approximately around 1:00 o'clock A. M. on May 23rd, when these three defendants placed the negro Jeff Davis, on the Railroad tracks. The actual kidnapping took place at around 11:00 o'clock on May 22nd, and continued until around 1:00 o'clock A. M. May 23rd. An eye witness testified to seeing these three defendants place the body of Jeff Davis on the Railroad tracks while one other person waited in the truck. There is a train called the 'Merry Widdow' which goes north shortly after 2:00 o'clock in the morning, and there is no doubt in the Court's mind but that these defendants, who were well acquainted with the time that all trains on the I. C. Railroad ran, intended for this negro to be run over by this train. Two negroes coming from a night resort found the negro Jeff Davis on the Railroad tracks before the train arrived and carried him up to the I. C. Station in the Town of Kentwood. The negro, Jeff Davis, was unconscious and does not remember even when

they stopped beating him and placed him in this truck, as he was beaten into unconsciousness while tied to the tree. This negro was beaten while tied to the tree for an hour or an hour and a half as witnesses a quarter to a half mile away could clearly hear the blows and the screams for help and begging for mercy by, the negro, Jeff Davis."

In the face of the facts as stated in the above per curiam of the trial judge, it is manifest that it cannot be held by this court that "the accused appear to have been convicted *without any evidence at all against them,*" and, consequently, "a question purely of law" is not presented on appeal in the present case.

■ (4) As to the third ground of the motion for new trial, "That the court erred in permitting evidence of the assault and battery to go before the jury as the defendants were being tried only for the crime of kidnapping," the trial judge says in his per curiam to bill of exceptions No. 1: "This bill, as the Court will note, was taken to that portion of the opening statement of the District Attorney in which he stated that he intended to prove that the negro was beaten after the culmination of the alleged kidnapping. The Court overruled this objection for the reason that from the time the negro was forced to get in the car with the four defendants in the Town of Kentwood, and as long as he was being held against his will, was one continuous transaction and offense and was all admissible, and the fact that he was beaten during his unlawful detention was admissible as a part of the whole transaction, and to prove the actual kidnapping and to show that he was being forcibly detained, and for the further reason that it showed a motive or reason for the kidnapping and was corroborative of all the testimony offered by the State as to the kidnapping and condition of the negro when found after the kidnapping."

Since the indictment against these defendants charges that they "did *wilfully, feloniously and forcibly seize and carry* from one part of the Parish of Tangipahoa to another part of the same Parish," the prosecuting witness, Jeff Davis, evidence of blows connected with such *forcible* seizure and carrying was properly admitted in the case, as well as the physical condition, after the crime was committed, of the victim of the kidnappers.

"In prosecution for kidnapping, * * * evidence of severity of punishment inflicted [by kidnappers] on assaulted party held admissible as res gestæ." Clayton v. State, 220 Ala. 39, 123 So. 236.

■ "What the parties did to the person seized after the commission of the crime charged, is, however, evidence of the original intent, and is relevant in aggravation or extenuation of the punishment." 35 Corpus Juris 904.

■ The motion for new trial was properly overruled.

(5) Motion in Arrest of Judgment.

Defendants are charged under section 1 of Act No. 221 of 1932, which reads as follows:

"Be it enacted by the Legislature of Louisiana, That whoever shall *forcibly seize*

*and carry* out of this State, or from one part of this State to another part, or from one part of a Parish of this State to another part of the same Parish, *or whoever shall imprison or secrete, without authority of law,* any person or persons, and all persons aiding, advising or abetting in such acts, shall be deemed guilty of the crime of kidnapping, and on conviction thereof shall suffer imprisonment at hard labor for not more than twenty (20) years." (Italics ours).

In State **v.** Backarow, 38 La.Ann. 316, the defendant was indicted under the then existing statute of the state against kidnapping, section 805 of the Revised Statutes of 1870, which reads:

"Whoever shall *forcibly seize and carry* out of this State, or from one part of this State to another, *or shall imprison or secrete any person without authority of law;* and all persons aiding, advising and abeting therein, on conviction, shall be imprisoned," etc. (Italics ours.)

In commenting in that case upon section 805 of the Revised Statutes of 1870, the Supreme Court, through Mr. Justice Todd as the organ of the court, said:

"We find not the least obscurity in the language of the Statute under consideration. It denounces, 1st, the act of *forcibly* seizing and carrying a person out of the State; 2d, the *forcibly* seizing and carrying a person from one part of the State to another part of the State; and 3d, the imprisonment or secreting a person *without lawful authority."* (Italics ours.)

As this court held in the Backarow Case that section 805 of the Revised Statutes of 1870 denounced three separate and distinct crimes, it follows necessarily that the words *"without authority of law"* in the statute qualify only the third offense of "imprisonment or secretion of a person *without authority of law."*

The present kidnapping statute of the state, Act No. 221 of 1932, merely added to section 805 of the Revised Statutes of 1870, the then existing kidnapping statute, a fourth offense of *forcibly seizing and carrying* a person "from one part of a Parish of this State to another part of the same Parish," the language of the two statutes being otherwise identical.

Act No. 221 of 1932 therefore denounces the following four separate and distinct offenses:

First, the forcibly seizing and carrying of a person out of the state.

Second, the forcibly seizing and carrying a person from one part of the state to another part of the state.

Third, the forcibly seizing and carrying a person from one part of a parish of this state to another part of the same parish.

Fourth, the imprisoning or secreting, without authority of law, any person or persons.

The indictment in this case charges that the defendants "did wilfully and feloniously *forcibly seize and carry* from one part of the Parish of Tangipahoa, State of Louisiana, to another part of the same Parish

665

* * * one Jeff Davis, contrary to the form of the Statutes * * *."

The third offense denounced by Act No. 221 of 1932, of *forcibly seizing and carrying* a person "from one part of a Parish of this State to another part of the same Parish," is sufficiently charged in the indictment returned against defendants in this case; the offense so charged being statutory, and the words of the statute, *"did forcibly seize and carry,"* being used in the indictment. It was not necessary to charge that the forcible seizing and carrying of Jeff Davis from one part of the parish of Tangipahoa to another part of the same parish was also done "without authority of law," as contended by defendants in the motion in arrest of judgment in this case, which was properly overruled by the trial judge.

It is therefore ordered that the sentence and conviction of each of the four defendants, herein appealed from, be affirmed.

HIGGINS, J., absent.

FOURNET, J., concurs.

O'NIELL, Chief Justice (concurring).

I concur in the opinion that the phrase "without authority of law," in Act No. 221 of 1932, is a part of the definition of the crime of kidnapping only when the crime is committed by imprisoning or secreting a person, but not when it is done by forcibly seizing a person and carrying him out of the state or from one part of the state to another part of the state. The grammatical

666

construction of the statute leaves no doubt about that in my mind. The repetition of the words "whoever shall" separates the definition of the crime of kidnapping by forcibly seizing and carrying away, from the definition of the crime of kidnapping by imprisoning or secreting, so that the first definition is completed and ended before the other is begun. The distinction between the two ways of committing the crime of kidnapping was not so clearly drawn in Act No. 86 of 1908, because the words "whoever shall" were not repeated at the end of the definition of the first way in which the crime might be committed. And, even before the statute was reconstructed, in the act of 1932, by the repetition of the pronoun "whoever," it was held, in State v. Holland, 120 La. 429, 45 So. 380, 381, under Rev.Stat. § 805, that, in an indictment charging that the defendant did forcibly seize and carry a person from one part of the state to another part, it was not necessary to charge that the forcible seizing and carrying away was done "without authority of law," but was sufficient to charge that it was done willfully, forcibly and unlawfully. The opinion of the court on this subject was expressed thus:

"Counsel for the accused has assigned as error that the indictment is fatally defective, because it omits the words 'without authority of law,' and does not use the qualifying word 'feloniously.' The indictment charges that the accused 'with force and arms, willfully, forcibly, and unlawfully, and against her will, did seize and convey,' etc. We consider that the word 'unlaw-

fully' necessarily implies 'without authority of law.' An unlawful act is one contrary to law, and hence without authority of law."

It is argued for the appellants that the interpretation that was given to the statute in State v. Holland is not now controlling because, in the act of 1932, a comma (,) was added, after the phrase "or whoever shall imprison or secrete," so as to set off parenthetically the phrase "without authority of law." But I do not believe that this change in the punctuation was intended to change the meaning of the law. There are not many writers who follow an orthodox rule of punctuation—especially in their use of commas—the modern idea being to omit the comma wherever the sentence in which it might be appropriate is plain enough without it. It is not at all likely that the writer of the act of 1932 believed that the placing of a comma between the phrase, "or whoever shall imprison or secrete," and the phrase, "without authority of law," would make such a material change in the meaning of the law as the appellants contend for in this case.

The only difference between the wording of the indictment in this case and the wording of the indictment in State v. Holland is that, in this case the indictment charges that the seizing and carrying away of the victim was done willfully, feloniously and forcibly, and in Holland's Case the indictment charged that the seizing and carrying away of his victim was done willfully, forcibly and unlawfully. The difference, therefore, is in the using of the word "unlawfully" in Holland's Case and the using of the word "feloniously" in this case. The word "fe-

loniously" is more comprehensive than "unlawfully" and includes, essentially, "unlawfully." Hence, according to the ruling in State v. Holland, to say that a person willfully, feloniously and forcibly seized and carried away another person is at least the equivalent of saying that the seizing and carrying away was done without authority of law.

Even if the indictment in this case should be deemed defective, for want of the phrase "without authority of law," this court would be forbidden by article 253 of the Code of Criminal Procedure to set aside the conviction on account of the defect, because the defendants did not make their objection to the indictment before or during the trial of the case. The article of the Code of Criminal Procedure declares:

"No indictment shall be quashed, * * nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment, unless the objection to such indictment, specifically stating the defect claimed, be made prior to the commencement of the trial or at such time thereafter [after the commencement of the trial] as the court in its discretion [may] permit."

The defect which the defendants now claim to have found in the indictment was not suggested either by way of a motion to quash, before the commencement of the trial, or by way of an objection to the testimony, during the trial. If such an objection to the wording of the indictment had been made before or during the trial, the district attorney would have had the right

to amend the indictment, and, if the amendment should have been deemed a matter of substance, the defendants would have been entitled to a postponement of the trial, and, if necessary, a discharge of the jury. Code Cr.Proc. arts. 253 and 364. A failure of a defendant to ask for a postponement of the trial in such a case is a waiver of any and all objection to the amendment of the indictment. State v. Johnson, 181 La. 1, 158 So. 570; State v. Walker, 189 La. 241, 179 So. 302, decided today.

The state proved, without any objection as to the sufficiency of the averments in the indictment, that the forcible seizing and carrying away of the victim of this crime was done without authority of law. It is so said in the statement per curiam on bill of exception No. 1; and it is admitted in the defendant's brief (second page) that the facts of the case are as stated in their supplemental motion for a new trial, "and in the trial judge's per curiam to Bill No. 1." Hence, even though it was not alleged in the exact words of the indictment, nevertheless it was proved on the trial of the case, without objection on that score, that the forcible seizing and carrying away of the victim in this case was done without authority of law. In such a case it would be a failure in the administering of justice to set free a defendant whose guilt has been proved in every essential element of the crime charged, after he has silently taken his chance of being forever acquitted of the crime charged. It was to prevent such a failure in the administering of justice that the provisions of article 253 of the Code of Criminal Procedure were adopted.