ODOM, Justice.
 

 The indictment against these defendants charges that they “did then and there feloniously and unlawfully keep a banking house at a place or house known as the ‘Forest Club’ located on the Winnsboro, Louisiana, — Monroe, Louisiana, highway, in Ward Six (6) of Richland Parish, State of Louisiana, and did then and there feloniously and unlawfully keep a banking game, to-wit: a game commonly called ‘Dice’, at which money was bet and hazarded, and the said W. C. Singley and R. H. Gahagan, did then and there feloniously and unlawfully assist in keeping the aforesaid banking game and banking house.”
 

 Defendants were tried before the court, and each was convicted. Defendant Gahagan was fined $1,000 and costs, and defendant Singley was fined $2,000 and costs, and in default of payment each was sentenced to serve 12 months in the parish jail. From the conviction and sentence they appealed.
 

 Defendants were prosecuted under Act 12 of 1870, Section 2 of which provides “That whoever shall keep a banking game, or banking house, at which money, or anything representing money, or any article of value shall be bet or hazarded, or shall aid or assist in keeping one, shall, on conviction for the first offense, be fined not less than one thousand, nor more than five thousand dollars”.
 

 During the progress of the trial, counsel for defendants reserved eight bills of exception. He filed a brief and argued the case orally before this court, but the
 
 *524
 
 bills numbered 1 to 7, inclusive, were not referred to in the brief and were not mentioned in oral argument. Bills of exception not mentioned by counsel either in brief or in oral argument are presumed to be abandoned and will not be considered by this court. State v. Campbell, 173 La. 831, 138 So. 853.
 

 The admitted facts are that two of the sheriff’s deputies, Boughton and Lane, raided an establishment known as Forest Club on November 24, 1939, and found therein a crap table, a blackjack table, a roulette wheel, about a peck of poker chips, and eight slot machines, the poker chips being stacked on the crap table at the time. The deputies took possession of, and carried away, all these devices, and at the trial the district attorney offered them in evidence. Counsel for defendants objected to these offerings on the ground “that they are irrelevant and immaterial”. The court overruled the obj ection,' and Bill of Exception No. 8 was reserved.
 

 The ruling was correct. ■ Defendants were prosecuted for keeping a banking house and conducting therein a banking game commonly known as “dice”, at which money was bet and hazarded. These devices were seized in the house. Such evidence was admissible to show the character of the establishment raided and the nature of the business therein conducted. A “banking house’’, as that term is used in the statute, is a place where-gambling is carried on, and a “banking game” is a gambling game at which money is bet or hazarded. It is admitted that roulette wheels, crap tables, and poker chips are devices found and used in gambling houses. These devices stamped the character of the place as a gaming house, and were admissible in evidence for that purpose.
 

 Furthermore, the deputies testified that, when they raided the place, a dice game, at which some six or eight persons were playing, was in progress and that the crap table was being used for that purpose and that the poker chips were stacked thereon, and that one of the defendants was standing at the table conducting the game, using a crooked stick with which he raked the dice back and forth. The deputies testified that one of the defendants admitted to them that he was conducting the game.
 

 Bill of Exception No.. 9 was reserved to the overruling of defendants’ motion for a new trial. The motion for a new trial was based upon the ground “that the verdict pronounced by the Court is contrary to the law”. Counsel asked, and was granted, leave to attach to this bill the entire record in the case.
 

 It is conceded by counsel for defendants that a motion for a new trial in a criminal case based on the ground that the verdict is contrary to the law presents nothing for review, and conceded also that this court’s appellate jurisdiction in criminal cases is limited to questions of law alone.
 

 The. settled rule is that this court will not examine the record brought up on appeal in a criminal case to ascertain whether the evidence was sufficient, or of
 
 *526
 
 sufficient weight, to support the verdict rendered by the court or the jury. In State v. Rogers, 152 La. 905, 94 So. 439, it was held that the testimony brought up to this court is “useful only if showing a total absence of evidence of guilt, not merely an insufficiency of evidence, however manifest such insufficiency might appear to the judges of this court”.
 

 In the case of State v. Edwards, 155 La. 305, 99 So. 229, 230, the motion for a new trial was based on the ground that the jury refused to believe defendant’s witnesses though such witnesses were not contradicted, and that the facts brought out at the trial made out a case of self-defense. This court was asked to review such facts and to find that the jury's verdict was not responsive to the evidence adduced. The court refused to examine the evidence for that purpose, saying:
 

 “To do so would be to usurp a power peculiarly vested in the jury, and of which this court has no jurisdiction.” (Citing Constitution of 1921, Section 10, Article
 
 7,
 
 and Section 9, Article 19.)
 

 The same rule applies, of course, to cases tried before the judge. In the case of State v. Gremillion, 160 La. 121, 106 So. 716, it was held, that, “When criminal case is tried by judge without jury, judge’s conclusions on questions of fact relating to the question of - guilt or innocence are final.” (Paragraph 1, Syllabus.)
 

 Counsel’s contention in this case is that there was no evidence at all offered against the accused to make out the crime charged, and that an examination of the testimony brought up will disclose that fact. We are asked to examine the record to see whether or not any testimony at all was adduced against defendants tending to show their guilt.
 

 This court has repeatedly held that, while it will not review the testimony to ascertain whether it is sufficient to support the verdict rendered, yet it will examine the record for the purpose of ascertaining whether any testimony at all was adduced, and, in cases where it is found that, as a matter of fact, no testimony at all was adduced against a defendant which tended to support the verdict of guilty rendered, a question of law arises which the court may decide. This is the rule relied upon by counsel for defendants in this case.
 

 He says in his brief at page 5: “It is the contention of the defendants that they have been convicted by the district judge without a scintilla of evidence tending to establish their guilt of the offense as charged in the indictment.”
 

 The general rule relied upon by counsel for defendants • is supported by the following cases, all of which are cited by him in his brief: State v. Daniels, 164 La. 737, 114 So. 636; State v. Gani, 157 La. 231, 102 So. 318; State v. Giangosso, 157 La. 360, 102 So. 429; State v. Dunnington, 157 La. 369, 102 So. 478; State v. Russell, 161 La. 167, 108 So. 324, and State v. Bush, 156 La. 973, 101 So. 382.
 

 In the case of State v. Gani, supra, this court said:
 

 “Where there is some evidence to sustain the conviction, no matter how little,
 
 *528
 
 this court cannot pass upon the sufficiency thereof. That comes within the exclusive province of the trial judge and jury. Aliter where there is no evidence at all; for that would present only a question of law, to wit, whether it be lawful to convict an accused without evidence whatsoever as to his guilt.”
 

 In that case, the defendant was convicted and sentenced as a second offender, and as to that conviction and sentence his complaint was that the conviction set forth as the first offense was then pending on appeal before this court, and said conviction was not then final. The court found as a fact that the conviction for the first offense had been affirmed by this court on April 30, the day before the trial for the alleged second offense, but that, in as much as the delays within which to apply to this court for a rehearing had not expired when he was tried as a second offender, it could not be said as a matter of law that he had been convicted of the first offense. Therefore, there was no evidence at all that he was guilty of being a second offender, and the verdict convicting him as a second offender was set aside.
 

 In the Dunnington case, supra [157 La. 369, 102 So. 481], the court reiterated the ruling in State v. Rogers, supra, quoted above, that this court has consistently adhered to the rule that it will not pass upon, or determine, the sufficiency or insufficiency of the evidence to convict, “however manifest such insufficiency may appear to the court”. The verdict in the Dunnington case was set aside upon the court’s finding that:
 

 “All the facts in this case show that the defendants are guilty of an offense other than that with which they are charged, and there being no proof at all of the resisting an officer, the particular crime with which they are charged, we are constrained to set aside the verdict as having been improperly and illegally rendered against them.”
 

 In the Gani- and Dunnington cases, the record itself clearly showed that the State had introduced no testimony at all tending to show that defendants were guilty of the crime charged. In the other cases the court found that there was some testimony, although very little, to indicate guilt, and the verdicts of conviction were sustained.
 

 In the Daniels case, supra, the court reiterated the general rule that, where there is no evidence at all of an element essential and sacramental to make out a crime, the court will set aside a conviction and grant a new trial, and said:
 

 “But such a situation must clearly and unmistakably appear from the record.”
 

 The case now before us does not fall within the general rule established by the cases cited by counsel, for the reason that the record shows that there was some testimony adduced at the trial tending to show that, defendants were guilty of the charge made against them, which was that they kept a banking house and conducted a banking game commonly called “dice”, at which money was bet and hazarded. It was abundantly shown, and this is not denied, that the place kept by these defendants was a gaming or gambling house. It is neither shown nor suggested that it
 
 *530
 
 was used for any other purpose. It was equipped for various kinds of gambling and especially for the operation of a banking game called “dice”, the charge laid in the indictment. The deputies found in one room a crap or dice table on which there were stacked so many poker chips that they did not count them, but one of them said there was about one-fourth of a bushel. Standing on' one side of this crap table were some six or eight men, throwing, or “shooting”, dice. The game was in progress when the witnesses walked in. On the other side of the table stood Gahagan, one of the defendants, who was not playing the dice game with the others but had in his hand a crooked stick with which he shoved the dice back and forth across the table after they were thrown, or “shot”, by the players. Since he was not playing in the game but was participating therein, he was evidently in charge, conducting or operating it. In fact, the deputies testified that he admitted he . was “running” the game. The presence of the poker chips on the table was evidence of gambling.
 

 The fact that Gahagan was not playing, or “shooting”, dice himself but was presiding at the gaming table was some evidence at least that this was not an ordinary “crap-shooting”, or dice game, played by the participants themselves covering one another’s bets and settling with one another. If it had been such game, it is odd that Gahagan did not play but instead stood at the table opposite the players, shoving the dice across the table back to the players with his crooked stick, posing all the while as the proprietor, running the game.
 

 In State v. Rabb, 130 La. 370, 57 So. 1008, 1009, it was said that, where dice players “bet against each other and settle with each other, the game is not a banking game”, and said further that, “where a person posing as the proprietor or responsible party stands ready, by himself or through another, to take all bets, and, receiving all that is lost by the other players, pays all that is won by them, or all that is won save a percentage which he retains, the game is a banking game; and whether the conditions first mentioned or those last mentioned exist in a particular case is a question of fact. * * * The game of craps may therefore be ‘banked’ or it may not, and whether it was or was not ‘banked’ in this instance was a question of fact which has been determined by the trial court, and which this court has no power to review.”
 

 In the case now before us, the trial judge found the accused guilty. We have examined the evidence brought up to- see whether it showed a total absence of any evidence tending to show guilt or whether any testimony at all was adduced to support the verdict rendered. We find that there was. The verdict rendered shows that it was sufficient to convince the trial judge that the accused were guilty. Under the Constitution and the settled jurisprudence, it is not the function of this court — indeed, the court has no power — to pass on the question whether the evidence adduced was sufficient to support the verdict.
 

 The verdict and sentence are affirmed.