324 So.2d 403 (1975)
STATE of Louisiana
v.
Johnnie Lee ROGERS.
No. 56573.
Supreme Court of Louisiana.
December 8, 1975.
*406 C. Jerome D'Aquila, New Roads, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Samuel C. Cashio, Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Johnnie Lee Rogers was charged by bill of information with armed robbery in violation of La.R.S. 14:64. After trial by jury, he was found guilty as charged. Subsequently, he was sentenced to serve twenty-five years at hard labor without benefit of parole, probation or suspension of sentence. On appeal, he relies upon sixteen bills of exceptions for reversal of his conviction and sentence.[1]

FACTS
On March 13, 1973 at approximately 10:00 a.m., Edward G. Stuard, a Louisiana state policeman, received a call on his patrol car radio informing him that the Livonia branch of the Guaranty bank had just been robbed by two black males. Trooper Stuard at once drove to the Fordiche Highway, intending to encounter the robbers en route from the town. He observed an oncoming vehicle driven by defendant, a black male, traveling at a high rate of speed. He turned his vehicle around, switched on his red lights and began to follow the car, which then pulled off the road. Defendant got out of the car and was ordered to stand against it with his hands on top of the car. Defendant was asked whether he had a driver's license and he replied in the negative. While standing outside the automobile and looking through the glass, the trooper observed, in plain view, a twenty-dollar bill crumpled in the car ashtray and a ten-dollar bill on the seat. Defendant was advised that he would be arrested for operating a vehicle without a driver's license and was also given his Miranda warnings. Upon being questioned concerning the bank robbery that had just taken place in Livonia, defendant insisted that he was innocent of any wrongdoing and, to prove this to the trooper, asked him to search the car so that he could see for himself that there was no weapon inside of it. Trooper Stuard conducted a preliminary, or "surface," search of the automobile and discovered a ten-dollar bill in the glove compartment. He then placed defendant under arrest, handcuffed him, searched his person, and found a wallet that contained about $500.00 in ten-dollar bills. The bills in defendant's wallet happened to be "bait" money, i.e., the serial numbers of the bills had been recorded by the bank that had *407 been robbed. Trooper Stuard, calling the sheriff's officer on his radio, ascertained that the serial numbers of the bills in defendant's wallet matched those recorded by the bank. At that point, he requested the assistance of FBI agents who arrived to question defendant further.

BILLS OF EXCEPTIONS NOS. 1, 8 AND 17

(Reserved During Hearing on Motion to Suppress)
At the hearing on his motion to suppress evidence seized in his automobile and on his person, defendant attempted to call Trooper Stuard, FBI Agent London M. Howard, and Deputy Sheriff Ray Pourciau to the witness stand for the purpose of cross-examination. Defendant reserved these bills to the trial judge's ruling that they were not subject to his cross-examination because they were his own witnesses.
In State v. Brent, 248 La. 1072, 184 So.2d 14, Cert. denied, 385 U.S. 992, 87 S.Ct. 605, 17 L.Ed.2d 452 (1966), and State v. Bush, 297 So.2d 415 (La.1974), we held that an accused does not have the right to call a witness under cross-examination in a criminal prosecution. As we stated in Brent and Bush, a witness called by defendant before he is called by the state becomes defendant's witness. We believe that the prohibition against calling one's own witness under cross-examination is applicable to a hearing on a motion to suppress. Accordingly, there is no merit in these bills.

BILL OF EXCEPTIONS NO. 7

(Reserved During Hearing on Motion to Suppress)
This bill was reserved when the trial judge refused to rule that the testimony of FBI Agent Elmer B. Litchfield, whom defendant called to the stand, was subject to impeachment.
La.R.S. 15:487 and 488 provide as follows:
La.R.S. 15:487.
No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.
La.R.S. 15:488:
`Surprise' in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.
Therefore, defendant was not permitted to impeach his own witness unless (1) the witness' testimony took him by surprise; or (2) the witness proved to be hostile. Defendant contends that the surprise occurs, within the meaning of La.R.S. 15:488, whenever the witness testifies upon some material matter against the party introducing him and such testimony is favorable to the other side. Defendant ignores, however, the part of the statute's definition of surprise, which states that the witness must fail to testify as expected. Although Agent Litchfield's testimony was, arguably, materially adverse, defendant makes no showing that such testimony was unexpected since the testimony, although slightly at variance with prior statements on one point, was not sufficiently contrary to justify impeachment.
Moreover, defendant makes no showing that Agent Litchfield was a hostile witness. From our review of the record, we conclude that he was a wholly cooperative *408 witness and that he readily answered all questions in a straightforward manner. Since defendant made no showing that the witness was hostile or that his testimony took him by surprise, the judge correctly ruled that it was improper for defendant to attempt to impeach his own witness. La.R.S. 15:487. See State v. Mims, 263 La. 193, 267 So.2d 570 (1972). This bill has no merit.

BILL OF EXCEPTIONS NO. 14

(Reserved During Hearing on Motion to Suppress)
Defendant attempted to cross-examine Agent London M. Howard, whom defendant had called to the stand. When the state objected, the trial judge prevented him from doing so. Defendant then asked the trial judge to rule that Agent Howard was a hostile witness so that defendant could cross-examine him. Upon the trial judge's refusal, this bill was reserved.
Defendant makes no showing that this witness was hostile. Defendant's only complaint regarding this witness was that he limited his answers to the questions specifically asked of him. As the trial judge stated: "Well, the fact that a witness answers a question in a legal precise manner doesn't indicate hostility. . . . (T)he ideal witness is the witness who only answers the questions that are asked him." Hence, the trial judge correctly ruled that this witness was not hostile. Defendant alleges in brief that Agent Howard's testimony was contrary to his previous testimony at a preliminary hearing. The record clearly shows that defendant did not make this contention at the time he sought to impeach this witness. Hence, there was no showing of surprise. In sum, the trial judge correctly ruled that defendant could not impeach his own witness. La.R.S. 15:487. This bill is without merit.

BILL OF EXCEPTIONS NO. 13

(Reserved During Hearing on Motion to Suppress)
In this bill, defendant alleges that the trial judge erred in permitting the prosecution to ask Agent Howard whether, in his opinion, defendant's written confession was made freely and voluntarily and not under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. Defendant contends that the question was improper because it called for an opinion on the part of the witness.
As a general rule, a witness is ordinarily incompetent to give opinion testimony. La.R.S. 15:463 provides:
Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have.
It is nonetheless well settled that, in exception to the rule of La.R.S. 15:463, a witness may state a natural inference from facts that he has observed. State v. Davalie, 313 So.2d 587 (La.1975); State v. Kirklin, 283 So.2d 713 (La.1973). However, it is necessary that the witness state the basic facts upon which the inference was based. State v. Lewis, 288 So.2d 324 (La.1974).
In the instant case, Agent Howard himself secured the written confession from defendant. He personally observed his signing of the confession and was therefore competent to testify whether he offered any promises or made any threats in order to obtain it. Voluntariness of the confession was a natural inference that he could draw from the absence of promises or threats. Howard, in response to questions propounded by the prosecution, stated all the facts surrounding the securing of the confession from which he concluded *409 that it was freely and voluntarily made. This bill therefore lacks merit.

BILL OF EXCEPTIONS NO. 22

(Reserved During Hearing on Motion to Suppress)
Defendant took the witness stand to testify at the hearing on the motion to suppress. On direct examination, he stated that he had spent a period of time at the state reformatory in Scotlandville. On cross-examination, the prosecution asked defendant why he had been sent there. Defendant reserved this bill when the trial judge overruled his objection to this question.
It is defendant's contention that the state, in asking him the reason he was sent to a reformatory, sought to elicit evidence of prior arrests or criminal proceedings that did not result in convictions. Under La.R.S. 15:495, only evidence of prior convictions is admissible for purposes of impeaching the credibility of any witness, including that of a defendant who takes the stand, on cross-examination.
Defendant's contention has no substance. Defendant himself testified on direct examination that he had been sent to Scotlandville. The questions of the state, following the overruling of defendant's objection, were directed to whether defendant had been sent to the reformatory in order to go to school and the extent of his education there. Defendant's literacy was at issue in the case. Thus, it was relevant on cross-examination for the state to inquire into these matters. At no point in the cross-examination did the state inquire of defendant the nature of the offense that caused his assignment to Scotlandville. Under La.R.S. 15:280, when a witness has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case. State v. Cordier, 297 So.2d 181 (La.1974); State v. Vassel, 285 So.2d 221 (La.1973). Hence, this bill is without merit.

BILL OF EXCEPTIONS NO. 24

(Reserved During Hearing on Motion to Suppress)

BILLS OF EXCEPTIONS NOS. 11 AND 12

(Reserved During Trial)
Defendant moved to suppress written and oral inculpatory statements that he made to Trooper Stuard and to agents of the Federal Bureau of Investigation. The trial judge ruled that the inculpatory statements were freely and voluntarily made and denied the motion. At trial, defendant's objection to the admission in evidence of his written confessions were likewise overruled. Defendant reserved these bills to the rulings of the trial judge and adopts the same argument in support of both.
On a trial of a motion to suppress evidence, the state has the burden of proving that a purported written confession or written inculpatory statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.Code Crim.P. art. 703(C) (1966). Likewise, before a confession can be introduced in evidence, the state must make the same affirmative showing. La.R.S. 15:451 (1966).
On the night of May 4, 1973, while defendant was incarcerated in the parish jail, Agents Litchfield and Howard presented to him a printed form fully advising him of his fifth amendment rights (S-11). See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At the bottom of the form is a paragraph entitled "Waiver of Rights," with a space for defendant's signature. Although defendant did not sign this form, it is stated thereon that: "Rogers read this form, stating he understood it, but did not desire to sign anything." This statement is corroborated by the testimony of Agents Litchfield and Howard who both testified to the same effect. Thereafter, defendant gave an oral *410 statement to Agents Litchfield and Howard admitting his part in the bank robbery.
On May 7, 1973, defendant was again presented with a printed form advising him of his Miranda rights and containing a section providing for waiver of these rights. This time, he signed the form (S-10). He then signed a six-page statement, written by Agent Howard, in which he recounted the events of the robbery and confessed his participation (S-15). Agents Howard and Litchfield were witnesses to his signing of the statement. They both testified that defendant read the statement after it was completed. Agent Howard stated that he also read the statement to him in its entirety and, prior to signing the last page, defendant wrote in his own handwriting: "I have read this six-page statement and it is true and correct to the best of my knowledge." On the following day (May 8), defendant also signed a one-page statement that inculpated an accomplice in the robbery (S-16). Agent Howard and Deputy Sheriff Arnold F. Hess were present at the time. Agent Howard testified that he orally advised him of his Miranda rights on this occasion. Deputy Sheriff Hess corroborated Agent Howard's testimony that the latter gave defendant his Miranda warnings before defendant made the statement.
Defendant advances essentially three arguments in support of his contention that the inculpatory statements were not freely and voluntarily made. First, he alleges that he was not informed of his Miranda rights before making the statements because he could not read the "Advice of Rights" form handed him. This argument is insubstantial. Defendant testified at the hearing on the motion to suppress. He admitted that he could write but denied that he could read. The trial judge properly gave little weight to this assertion. Defendant had an eighth-grade education. When asked to read the forms advising him of his constitutional rights, he gave all indications that he could do so. It was also established that he wrote letters to relatives while in jail. His testimony that he was illiterate was clearly self-serving and was contradicted by the weight of the evidence.
Second, defendant argues that the inculpatory statements were obtained by a promise that state charges would be dropped by the district attorney. Defendant testified at the hearing on the motion to suppress that Agent Howard told him charges would be dropped under the Louisiana armed robbery statute and would be brought only under the federal bank robbery statute, which imposes a lesser maximum sentence. Although Agent Howard testified that he did inform defendant of the penalty for his offense under both federal and state law, he also testified that such an explanation was standard procedure and was not given in connection with any promise or inducement whatsoever. Defendant's testimony that he was induced to sign the inculpatory statements because he was led to believe that a "deal" was in the making with state authorities was uncorroborated and was unequivocally contradicted by Agent Howard and all other federal and state officials. Further, defendant offered no evidence that the district attorney was a party to the alleged arrangement. His consent would have been necessary for a dismissal of state charges. La.Code Crim.P. art. 61 (1966).
Third, defendant avers that Agent Howard's promise that a federal charge of possession of an illegal weapon against him and his commonlaw wife would be dropped if he confessed to participation in the bank robbery. Agent Howard, testifying at the hearing on the motion to suppress, strongly denied this allegation. Moreover, it was not corroborated by any other witness.
Upon reviewing the testimony of the witnesses at the motion to suppress, we believe, as did the trial judge, that the state satisfied its burden of proving that all inculpatory statements were made freely and voluntarily and were not made under the *411 influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.Code Crim.P. art. 703(C) (1966). Consequently, the trial judge correctly denied the motion to suppress. For similar reasons, the confessions were properly received in evidence at trial. La.R.S. 15:451 (1966).
Finally, defendant's oral statements made to Trooper Stuard before he was placed under arrest and given his Miranda warnings were totally unrelated to the charge of armed robbery nor were they obtained at a time when defendant was under "custodial interrogation." Rather, the questions were merely asked at a stage of preliminary investigation. See State v. Roach, 322 So.2d 222 (La.1975).
Defendant next contends that the inculpatory statements, even if made freely and voluntarily, are inadmissible because they are tainted by an unlawful arrest. It is urged that Trooper Stuard arrested him without probable cause and that these statements are the fruits of that arrest. He relies on the recent decision of the United States Supreme Court in Brown v. Illinois, 42 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
Reviewing the sequence of events that led to his arrest, we believe that defendant's contention has no substance. In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the United States Supreme Court stated:
In Terry this Court recognized that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (Citation omitted) The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. [citation omitted] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [citations omitted]
See also Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Jefferson, 284 So.2d 882 (La.1973).
Applying the standards set forth in Adams v. Williams and Terry v. Ohio to the facts of this case, we conclude that Trooper Stuard was justified in stopping defendant's vehicle for investigatory purposes. Trooper Stuard was informed that two black males had just robbed a Livonia bank. He witnessed a speeding vehicle driven by a black male en route from the town soon after he received this information. Trooper Stuard therefore had reasonable cause to make an investigatory stop of the vehicle, even though probable cause might not have existed at that point in time for defendant's arrest.
Having made a lawful, investigatory stop, Trooper Stuard witnessed, through the car window, in plain view, loose paper money in defendant's car. The "plain view" doctrine was therefore applicable. It is settled that objects falling within the plain view of an officer who had a right to be in the position to have that view are subject to seizure and may be introduced in evidence.[2]Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). The "plain view" doctrine has been applied where a police officer is not searching for evidence *412 against the accused, but nonetheless inadvertently comes across an incriminating object. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
We believe that his observation of the loose bills lying in the car in suspicious circumstances, together with his knowledge of the armed robbery that had so recently taken place, gave Trooper Stuard probable cause to arrest defendant. Accordingly, his inculpatory statements were not tainted by an unlawful arrest. These bills are therefore without merit.

BILL OF EXCEPTIONS NO. 25

(Reserved During Hearing on Motion to Suppress)
Defendant filed a motion to suppress the tangible evidence seized from his person and automobile on the ground that the items were seized in violation of his fourth amendment rights. This bill was reserved to the trial judge's denial of this motion.
At the trial of a motion to suppress evidence other than a written confession or written inculpatory statement, the burden is on the defendant to prove the grounds of his motion. La.Code Crim.P. art. 703(C) (1966).
Contending that Trooper Stuard's initial investigatory stop of his vehicle was unlawful, defendant urges that, as a result, all evidence seized in connection therewith should have been suppressed. The contention that Trooper Stuard's investigatory stop was unlawful was discussed and rejected in our disposition of Bills of Exceptions Nos. 24 and 11, and hence has no merit.
The first search of defendant's vehicle occurred after Trooper Stuard observed the two bills in defendant's car. As stated previously, these items were in the officer's "plain view" and he had a legitimate right to have that view. Therefore, they were subject to seizure without a search warrant. Coolidge v. New Hampshire, supra; State v. Hargiss, 288 So.2d 633 (La.1974). Trooper Stuard testified that his "surface" search of the vehicle, during which another bill was located in the glove compartment, was conducted pursuant to defendant's free and uncoerced verbal consent. A valid search or seizure may be made without a warrant where the accused consents to such a search or seizure. State v. Sears, 298 So.2d 814 (La.1974); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968).[3]
The next search occurred when Trooper Stuard, after placing defendant under arrest, searched his person and seized his wallet, which contained about $500.00 in "bait" money. In our treatment of Bills of Exceptions Nos. 24, 11 & 12, we stated that Trooper Stuard had probable cause to arrest defendant. The search of defendant's person, occurring immediately thereafter, was clearly incident to this lawful arrest. No warrant was necessary for this search; a search incident to a lawful arrest is an exception to the warrant requirement of the fourth amendment. State v. Hargiss, supra. Defendant was again searched by Deputy Sheriff Pourciau, accompanied by Trooper Stuard, on the day after his arrest while he was incarcerated in the parish jail. Deputy Pourciau testified that the purpose of the search was to disclose the existence of dangerous weapons or other contraband on his person. The search was in accordance with the sheriff's department's usual practice of searching arrestees for keys, guns, knives, drugs, or other contraband. Instead, Deputy Pourciau happened to discover $480.00 in twenty-dollar bills in defendant's pants pockets. *413 He checked the serial numbers on these bills against the list of numbers supplied by the Guaranty bank and ascertained that they matched. The trial judge properly refused to suppress this evidence. Searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention. Both the arrestee's person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place, and, if evidence of crime is discovered, it may be seized and admitted in evidence. United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).
The final seizure at issue is that of the items discovered in defendant's automobile pursuant to a consent search. A search that is conducted pursuant to a consent is one of the specifically established exceptions to the requirements of both a warrant and probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).
Following his arrest, defendant's vehicle was towed to the parish courthouse. While in the company of the federal agents in the courthouse, defendant was approached by Agent Delbert W. Hahn. At the hearing on the motion to suppress, Agent Hahn testified that he asked defendant for his consent to search the car. After defendant indicated that his consent would be given, Agent Hahn told him that he was presenting him with a consent-to-search form. Voicing no objections, defendant read and signed the form. Agents Litchfield, Hahn and Wood then proceeded to conduct a search of defendant's vehicle, which was parked outside the courthouse. Three currency bills, a bank money wrapper, and some clothing were seized. Agent Hahn testified that no threats, promises, or inducements were used to obtain the signature, and defendant does not allege to the contrary. He contends, however, that the consent was invalid because Agent Hahn did not inform him that he had a constitutional right to refuse his consent. This contention was rejected by the United States Supreme Court in Schneckloth, which held that voluntariness of consent is a question of fact to be determined from all the surrounding circumstances. While defendant's knowledge of the right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.[4] In this case, defendant introduced no evidence tending to show that his signature on the written consent form was the result of any form of coercion or promise. On the contrary, the facts in this case, as set forth above, clearly disclose the giving of a free and voluntary consent.
In sum, defendant failed to satisfy his burden of proving, at the hearing on the motion to suppress, that the tangible evidence was obtained by an unlawful search or seizure. Hence, the trial judge correctly refused to suppress this evidence. This bill therefore has no merit.

BILLS OF EXCEPTIONS NOS. 1 AND 4

(Reserved at Trial)
These bills were reserved when the trial judge refused to allow defense counsel to advise two prospective jurors of their personal exemption as peace officers. The *414 trial judge also denied defense counsel's request that he read the applicable exemption provisions to every prospective juror. Defendant exercised peremptory challenges against both prospective jurors, and exhausted his peremptory challenges prior to completion of the panel. La.Code Crim.P. art. 800 (1966).
Prior to its amendment by La.Acts 1974, Ex.Sess., No. 22, § 1,[5] article 403 of the Code of Criminal Procedure provided that exemptions from jury service are personal to the juror and not a ground for challenge. The fact that a prospective juror has a personal exemption does not affect his qualifications to serve as a juror. The scope of examination of jurors is within the discretion of the trial judge. La.Code Crim.P. art. 786 (1966). We do not find that the trial judge abused this discretion by refusing either to permit defense counsel to advise two prospective jurors of their personal exemptions or to read the applicable exemption provisions to each prospective juror. Hence, this bill lacks merit.

BILL OF EXCEPTIONS NO. 7

(Reserved at Trial)
This bill was reserved when the trial judge refused to grant defendant's motion for a mistrial. The basis for this motion was the following question propounded to Trooper Stuard by the district attorney:
DISTRICT ATTORNEY: Now, is that all you know about this case: You don't know that this is the man, one of the men, that robbed the bank, do you?
WITNESS: Yes, I would say, yes.
Defendant contended at trial that this question called for an opinion as to his guilt. The district attorney's question actually contained two questions. First, "[I]s that all you know about the case [?]" and second, "You don't know that this is the man, one of the men, that robbed the bank, do you?" The latter question was phrased in the negative. In responding, Trooper Stuard apparently answered the first question, for immediately after defendant's objection, the witness stated he was not present to see defendant rob the bank. Therefore, in this context, there is no merit in the contention that the answer complained of voiced an opinion as to defendant's guilt. This bill has no merit.

BILL OF EXCEPTIONS NO. 8

(Reserved at Trial)
After his car was stopped by Trooper Stuard, defendant explained that he was leaving town in order to meet someone from Texas. The state asked Trooper Stuard at trial whether he had believed that story, whereupon defendant objected that this question called for an opinion from the witness. Defendant reserved this bill to the trial judge's overruling of his objection.
The question propounded by the state did not call for inadmissible opinion evidence. The purpose of the question was to determine why Trooper Stuard failed to make an investigation of the truth of defendant's story. The question, in this context, did not call for an opinion as to the truth or falsity of the story, but rather for the fact of Trooper Stuard's state of mind upon hearing it. The fact that he did not believe the story was relevant to explain his *415 failure to investigate the story and his other actions. This bill has no merit.

BILL OF EXCEPTIONS NO. 9

(Reserved at Trial)
The prosecution asked Agent Litchfield to examine the serial number on a bill and state whether or not a bill of that description and serial number was included on the Guaranty bank's "bait list." Defendant objected to this question. He reserved this bill to the trial judge's overruling of his objection.
Under La.R.S. 15:463, a witness can testify as to facts within his knowledge. It was a fact within Agent Litchfield's knowledge that the serial number of the bill and the serial number on the "bait list," both of which had already been admitted in evidence, were the same. Agent Litchfield was therefore competent to testify as to this fact. This bill is without merit.
We note, ex propria motu,[6] that the minutes of the trial proceedings fail to show that the trial judge, in imposing sentence, gave defendant credit toward service of his sentence for time spent in actual custody prior to its imposition. Such an allowance of credit is mandatory. La.Code Crim.P. art. 880 (1966), as amended, La.Acts 1970, No. 285, § 1. The case must therefore be remanded to the trial court for correction of sentence.

DECREE
For the reasons assigned, the conviction is affirmed and the case is remanded to the trial court for correction of sentence.
DIXON, J., concurs, disagreeing with the treatment of bills 1, 4 & 13.
NOTES
[1] Defendant reserved and perfected a total of forty-two bills of exceptions of which only sixteen were briefed and argued before this court on appeal. The remaining bills are therefore considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[2] Trooper Stuard did not actually seize and remove the paper bills from the car at this time. They were later seized by federal agents pursuant to a consent-to-search form with defendant's signature.
[3] It should be noted that Trooper Stuard, after completing the search, did not seize these items or remove them from the car.
[4] Although advising defendant of his right to refuse consent is not essential to our finding of voluntariness, we note that the consent-to-search form reads: "I Johnny Lee Rogers, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, . . ." Thus, when defendant read this form, he was made cognizant of his constitutional right to refuse his consent.
[5] Rules of this court now provide for exemptions from jury service. La.Const. art. 5, sec. 33(B) (1974); Louisiana Supreme Court Rule 25.
[6] The failure of the trial judge to allow credit for time served in actual custody prior to imposition of sentence is an error that is discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. La.Code Crim.P. art. 920(2), as amended, La.Acts 1974, No. 207, § 1; State v. Dillard, 320 So.2d 116 (La.1975); State v. Hall, 287 So.2d 798 (La.1973).