330 So.2d 905 (1976)
STATE of Louisiana
v.
Tye Phillips MIMS.
No. 57073.
Supreme Court of Louisiana.
March 29, 1976.
*906 Lloyd F. Love, Ferriday, E. H. Fitzpatrick, Jr., Natchez, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen.; W. C. Falkenheiner, Dist. Atty., John Sturgeon, Asst. Dist. Atty., for plaintiff-appellee.
MARCUS, Justice.
Tye Phillips Mims was charged by bill of information with possession of a *907 controlled dangerous substance, to-wit: marijuana, in violation of La.R.S. 40:966C and D(1). After trial by judge on February 26, 1975, he was found guilty as charged and sentenced to pay a fine of five hundred dollars plus costs and to be imprisoned in the parish jail for ten days. An appeal was taken to this court. A case is apealable to this court if the defendant has been convicted of a felony or a fine exceeding five hundred dollars or imprisonment exceeding six months actually has been imposed.[1] Defendant was not convicted of a felony,[2] nor did the fine or term of imprisonment actually imposed exceed five hundred dollars or imprisonment for six months. Hence, the case is not appealable to this court. However, we will consider the appeal as an application for a writ of review under our supervisory jurisdiction.[3] Relator asserts four assignments of error for the granting of this writ and reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant filed a motion to suppress the evidence seized from his car on the ground that it was recovered as a result of an illegal search and seizure. After a hearing, the motion was denied. Defendant contends that the trial court erred in this ruling.
A bulletin was broadcast over the police radio regarding a complaint that occupants of a particularly described vehicle had purchased cigarette papers from a local store in Ferriday, and one of the occupants had "a strong smell of marijuana" on his person. This bulletin was logged at 5:00 p. m. on August 3, 1974. Shortly thereafter, Trooper James W. Farris of the Louisiana State Police observed a vehicle meeting this description traveling "pretty fast." He followed the vehicle to where it stopped at the Spokane grocery. The occupants alighted from the car and started walking toward the store. Officer Farris got out of his vehicle and, as he walked past their vehicle in the direction of the store, he observed what appeared to be numerous marijuana seeds on the seats and floorboard of their vehicle. Upon inquiry, relator, Tye Mims, admitted his ownership of the vehicle and identified himself by exhibiting his driver's license to the police officer. Trooper Farris then radioed Trooper Blunschi, who was in the vicinity, for assistance. Trooper Blunschi arrived at the scene in about five to ten minutes. Relator was presented with a "permission to search" form which he read, acknowledged that he understood, and thereafter signed. This form was executed at 5:25 p. m. A thorough search of the vehicle was then conducted by the police officers who recovered marijuana seeds and gleanings from the front and back seats, under the seats, the floorboard, and the glove compartment of this car. They likewise found a "roach" holder, cigarette papers and a cardboard tube from a coat hanger, that latter of which smelled of marijuana and was burned on one end. Relator was then placed under arrest and advised of his Miranda rights.
Relator admitted stopping at the store in Ferriday but denied purchasing any cigarette papers. He admitted signing the *908 "permission to search" form, stating that he had nothing to hide in his car. However, he explained that he consented to the search and signed the permission form because of representations by the police officers that a search warrant could be obtained if he refused to do so. The testimony of several of the occupants of the vehicle generally corroborated relator's testimony except that they admitted that an inquiry had been made at the store in Ferriday about the purchase of cigarette papers but they denied purchasing any as there was none available.
After hearing the evidence, the trial judge concluded that relator's consent had been validly obtained.
In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the United States Supreme Court stated:
In Terry this Court recognized that `a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' [citation omitted] The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. [citation omitted] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [citations omitted]
See also Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Rogers, 324 So.2d 403 (La.1975); State v. Jefferson, 284 So.2d 882 (La.1973); La. Code Crim.P. art. 215.1(A).
Applying the standards set forth in Adams and Terry, we conclude that Trooper Farris clearly had reasonable cause to approach and briefly detain relator for investigatory purposes. Trooper Farris had just received a police bulletin describing the vehicle in question as being occupied by persons suspected of possessing marijuana and had personally observed marijuana seeds on the seats and floorboard of said vehicle.
A consent search is one of the specifically established exceptions to the warrant requirement of the fourth amendment. Schneckloth v. Bustamonte, 412 U. S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Hence, a valid search or seizure may be made without a warrant where the accused consents to such a search or seizure. State v. Rogers, supra; State v. Sears, 298 So.2d 814 (La.1974); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968). Voluntariness of consent is a question of fact to be determined from all the circumstances. Schneckloth v. Bustamonte, supra; State v. Rogers, supra.
After reviewing the evidence adduced at the hearing on the motion to suppress, we find no abuse of discretion in the trial judge's conclusion that relator's consent to search the vehicle was freely and voluntarily given. Therefore, the trial judge correctly denied defendant's motion to suppress the evidence seized from his car. Assignment of Error No. 1 is without merit.
ASSIGNMENT OF ERROR NO. 2
Defendant's motion to suppress his written statement was denied by the trial judge. In brief, defendant asserts that the arresting officers failed to give him his Miranda warnings prior to questioning and therefore any information obtained cannot be used at trial.
There is no merit to this contention. As indicated in the facts under the previous *909 assignment of error, immediately after the seizure of the marijuana seeds and gleanings and drug paraphernalia from relator's car, relator was placed under arrest and orally advised of his Miranda rights by Trooper Farris, who testified that Mims affirmatively acknowledged his understanding of his rights and agreed to cooperate with them. Mims was then taken to the Concordia Parish sheriff's office in Vidalia where he was again advised of his rights and signed a "waiver of rights" form. This form was executed at 6:55 p. m. Relator then made a statement which was written and signed by him. In the printed portion above the written statement, there is an acknowledgment of his rights and waiver of same. Mims admitted that Officer Farris read the printed portion to him prior to his writing the statement. The statement was started at 6:57 p. m. and completed at 7:12 p. m. While relator denied receiving his rights at the Spokane grocery, he admitted that his rights were read to him and that he signed the waiver of rights form at the courthouse. However, he denies understanding them. At the time of trial (some six months after the date of the alleged crime), relator was seventeen years old and senior in high school. Under the facts of this case, we find that relator was fully advised of his Miranda rights and that he knowingly and intelligently waived same.
Furthermore, we do not find under the facts of this case that relator was under custodial interrogation until after the marijuana seeds and gleanings and drug paraphernalia were seized from his car and he was placed under arrest. At this point, Miranda warnings must and did follow. Prior to this time, questioning by police amounted to only "general on-the-scene questioning as to facts surrounding the crime" during which no Miranda warnings are required. Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Roach, 322 So.2d 222 (La.1975).
Hence, the trial judge properly denied defendant's motion to suppress his written statement. Assignment of Error No. 2 is without substance.
ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial judge erred in denying his motion for a new trial on the ground that there was "no evidence elicited to prove the essential elements of the offense for which defendant was tried."
Article 858 of the Louisiana Code of Criminal Procedure provides:
Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law.
Where a motion for a new trial is grounded on the assertion that there was no evidence at all on which the verdict of conviction can be supported, a question of law is presented for our review. However, it is well settled that where there is some evidence to sustain the conviction, no matter how little, this court cannot pass on the sufficiency thereof. That comes within the exclusive province of the trial judge or jury. It is only where there is no evidence at all of some essential element of the crime charged that we have the right to annul the conviction. City of Monroe v. Barfield, 246 La. 315, 164 So.2d 340 (1964); State v. Vines, 245 La. 977, 162 So.2d 332 (1964); State v. Bueche, 243 La. 160, 142 So.2d 381 (1962); State v. Copling, 242 La. 199, 135 So.2d 271 (1961); State v. Dunnington, 157 La. 369, 102 So. 478 (1924).
La.R.S. 40:966C provides in pertinent part:
It is unlawful for any person knowingly or intentionally to possess a controlled *910 dangerous substance classified in Schedule I[4] . . ..
The jurisprudence has firmly established that a person may be in "constructive" possession of a controlled dangerous substance if, though not in physical custody, it is subject to his dominion and control. State v. Knight, 298 So.2d 726 (La.1974); State v. Porter, 296 So.2d 302 (La.1974); State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). The jurisprudence has also established that guilty knowledge is an essential ingredient of the crime of possession of a controlled dangerous substance. State v. Knight, supra, and cases cited therein. Although intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction. La.R.S. 15:445; State v. Vines, supra.
In the instant case, marijuana seeds and gleanings were recovered from the front and back seats, under the seats, on the floorboard and in the glove compartment. Likewise, a "roach" holder and cigarette papers were found in the car. A cardboard tube, which smelled of marijuana and burned on one end, was also found behind the sunvisor. While the vehicle in question was owned by relator's father and sometimes used by other members of his family, it was regularly used by relator to go to school. Relator had been driving the vehicle, together with several of his friends, for a couple of hours prior to the search and seizure. There was evidence that one of the boys in the vehicle had entered the grocery in Ferriday about 4:00 or 5:00 p. m. (shortly before the search and seizure) and caused a disturbance by pushing people around in the store. He also had a "strong smell of marijuana" about his person. There was expert testimony to the effect that the tested substance recovered from the vehicle was marijuana. Finally, relator made a written confession to the police.[5] While the statement is subject to various interpretations, the trier of fact could construe it as being partially inculpatory.
Under the foregoing circumstances, we conclude that the record contains some evidence that Mims knowingly or intentionally possessed the marijuana in question. The numerous seeds and gleanings and drug paraphernalia, although not found on his person, were discovered in areas under his direct control and dominion. This amounts to some evidence of constructive possession. Likewise, the circumstances of this case present some evidence from *911 which guilty knowledge may be inferred. Hence, the conviction will not be disturbed. Assignment of Error No. 3 is without merit.
ASSIGNMENT OF ERROR NO. 4
Defendant urges that the trial judge erred in permitting in evidence a bottle of marijuana seeds and gleanings recovered during the search. He alleges that the prosecution did not prove an unbroken chain of custody from the time the substance was seized until it was admitted in evidence. As proof of the state's improper storing procedure, he points to Trooper Farris' admission that he kept the evidence for sixteen days at his residence before transporting it to the crime lab in Baton Rouge.
This argument has no substance. In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), we stated:
To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. [citations omitted]
The lack of positive identification goes to the weight of the evidence, rather than to its admissibility. Ultimately, connexity of physical evidence is a factual matter for determination by the jury. [citations omitted]
See also State v. Roach, 322 So.2d 222 (La.1975); State v. Freeman, 306 So.2d 703 (La.1975); State v. Flood, 301 So.2d 637 (La.1974); State v. Isaac, 261 La. 487, 260 So.2d 302 (1972).
In the instant case, Troopers Farris and Blunschi conducted the search wherein the marijuana seeds and gleanings and drug paraphernalia were recovered from relator's car. Some of the seeds and gleanings were placed into an envelope and others into an empty medicine bottle. Trooper Farris then made a list of the items seized. He kept them in a locked filing cabinet at his home from the date of seizure (August 3) until he personally delivered them to the crime lab in Baton Rouge (August 19). The items were tested and kept in the evidence locker there until brought to court on the day of trial by a criminalist from the crime lab. The bottle containing the marijuana was received in evidence.
The chain of custody was amply established by this testimony. Clearly, it was more probable than not that the marijuana introduced in evidence was related to the case. The trial judge properly permitted its admission in evidence. There is no merit in this assignment of error.

DECREE
For the reasons assigned, the appeal is dismissed, and the application for a writ under our supervisory jurisdiction is denied.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
In the absence of reasonable grounds (probable cause) to believe a person is committing or has committed or is about to commit a crime, there is no Louisiana statute or United States Supreme Court jurisprudence which permits the detention of a person by the police.
*912 Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921, 32 L.Ed.2d 612 (1972), interpreted Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), as permitting a limited protective search for concealed weapons by a policeman "making a reasonable investigatory stop." The Adams case and Terry v. Ohio cannot be used to support the proposition that suspicion  even reasonable suspicion  will justify a stop and search to discover evidence of crime:
"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.. . . " Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612.
My understanding of the evidence in the case before us is that the police detained the defendant on nothing more than suspicion. The facts of both Terry and Adams can be interpreted to involve probable cause. The search in Terry and Adams was for weapons only. Here the search was for suspected marijuana.
If my interpretation of the evidence is correct, the search was not a plain-view search, nor one for which there was a valid consent, nor one permitted by the United States and Louisiana Constitutions.
CALOGERO, Justice (dissenting).
I dissent for the reasons assigned by Justice DIXON and for the following reasons.
I find merit in relator's assignment of error number three. Mims was charged with possession of marijuana. Although none of the illegal substance was found on Mims or on any of the occupants of his car, the two policemen were able to find, during a thorough, forty-five minute search of Mim's car, an extremely small amount of material which a state expert was able to identify as marijuana. According to Officer Blunschi, the seized material was found at various places in the car. The seeds and gleanings, and some ashes, were placed in a small medicine bottle. A burnt cardboard coat hanger tube was also found behind one of the two sun visors. Although Officer Blunschi testified that he felt the coat hanger tube smelled of marijuana, and the tube was apparently admitted into evidence, no expert testimony was introduced to indicate that the tube contained any marijuana. Although he said that a "roach clip" was found in the car at an undisclosed location, and it was introduced into evidence, there was no testimony that any particles or gleanings of marijuana were attached to it. The seeds which were seized were not analyzed by the state's expert, and were not admitted into evidence. The only material tested by the expert was "gleanings of vegetable material" which were placed in a small medicine bottle by the officers along with ashes and seeds which were never analyzed. There is no indication in the officers' testimony whether all of the vegetable gleanings were found in one location in the car, or whether the amount seized was found in several locations. There is also no indication in the record whether the gleanings of marijuana were discovered in a location hidden from view, such as under a seat, or whether they were found in a more visible location. Although there was no testimony as to how much the marijuana weighed, the expert described the total amount of marijuana as "gleanings"[1] which he defined as "a very small amount."
*913 But there is clear testimony that no marijuana at all, nor any smoking paraphernalia, was found on the person of the defendant or on any occupant of the car.
The state concedes that the case against Mims is one of constructive possession, more precisely, constructive possession of "gleanings" of marijuana. As we stated in State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971), "A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control." In addition to having the requisite dominion and control over the substance, the state must prove that the defendant intended to possess the illegal drug.
The law in this area was first set out by this Court in 1955 in the case of State v. Johnson, 228 La. 317, 82 So.2d 24 (1955) in which we explained:
"The word `possession' means simply the owning or having in one's power; to have and to hold as property; ownership, whether rightfully or wrongfully; actual personal control and care; the right of exercising acts of dominion. [citation omitted]
"Unlawful possession, where one is invested with some right of dominion, can be defined as a possession which in the ordinary course of human experience necessarily involves knowledge of the fact that one is possessing either right-fully or unlawfully as well as knowledge of the criminal consequences which one should reasonably anticipate to result therefrom. For, no crime can exist without the combination of a criminal act and a criminal intent, or an evil motive, or with a guilty knowledge of its consequences. State v. Howard, 162 La. 719, 111 So. 72.
"Therefore, guilty knowledge is an essential ingredient of the crime of possession of narcotic drugs. The crime of unlawful possession of narcotic drugs as denounced by law cannot exist without proof of guilty knowledge; for, such possession would not be a possession contemplated by the statute."
The later jurisprudence has firmly established this principle. State v. Alford, 323 So.2d 788 (La.1975); State v. Knight, 298 So.2d 726 (La.1975); State v. Porter, 296 So.2d 302 (La.1974); State v. Williams, 260 La. 1167, 258 So.2d 539 (1972); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970). This element of guilty knowledge has been judicially defined as "the knowing and intentional possession of a drug subjecting the possessor to criminal liability." State v. Smith, 257 La. 896, 244 So.2d 824 (1971). Thus to sustain a conviction for constructive possession of marijuana the state must introduce some evidence that defendant exercised dominion and control over the illegal drug, and that the accused both knew the substance he possessed was an illegal drug and intended to possess it. See State v. Smith, supra.
I do not feel that the state has produced any proof at all that this defendant knowingly and intentionally possessed the marijuana gleanings found in his car. What evidence the state presented, exclusive of the substance possessed, was of a peripheral and non-conclusive nature,[2] bearing not *914 at all upon the central issue in this case. On that central and significant issue, the substance possessed, I do not believe that the state has produced evidence of defendant's knowing and intentional, although constructive, possession of marijuana, by its showing that scattered about Mims' car were gleanings, minute bits of vegetable matter, which, even after forty-five minutes of painstaking gathering, were so miniscule and lacking in substance that they could not be employed to make even one miniature marijuana cigarette. I believe that in a constructive possession case the requisite guilty knowledge is simply not shown where the only evidence of intent is the substance itself and where the substance over which defendant purportedly intentionally and knowingly exercised dominion and control consists merely of gleanings in the minimal quantities which were found in this case.
For these reasons, I respectfully dissent.
NOTES
[1] La.Const. art. V, § 5(D) (1974) provides:

Appellate Jurisdiction. In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional; (2) the defendant has been convicted of a felony or fine exceeding five hundred dollars or imprisonment exceeding six months actually has been imposed.
[2] Penalty for violation of La.R.S. 40:966C and D(1) (possession of marijuana  first conviction) is a fine of not more than five hundred dollars and/or imprisonment in the parish jail for not more than six months. A felony is defined as an offense that may be punished by death or by imprisonment at hard labor. La.Code Crim.P. art. 933(3). A misdemeanor is defined as any offense other than a felony, and includes the violation of an ordinance providing a penal sanction. Id. art. 933(4).
[3] La.Const. art. V, § 5(A) (1974).
[4] Marijuana is classified as a controlled dangerous substance in Schedule I. La.R.S. 40:964.
[5] 
[1] Gleanings are defined as "things acquired by gleaning"; to glean means "to pick up or gather together the scattered remainder of grain or other produce dropped or left lying by reapers or other regular gatherers"; "to gradually scrape together . . . material found here and there"; "to pick up or scrape together material in piecemeal fashion"; "to acquire bit by bit from some source." Webster's Third New International Dictionary (1971).
[2] The evidence which I refer to above as peripheral and non-conclusive included the following: one of the occupants of Mims' car on whom no marijuana was found had been seen acting in an erratic manner and was said to "smell like he had marijuana on him" when earlier he had sought, unsuccessfully, to purchase cigarette papers; a roach clip was found in the car; a coat hanger tube, not shown to bear marijuana but nonetheless said to "smell" of marijuana, was found behind a sun visor. The state, of course, also produced a "confession" which because of its content is not seriously urged by the state as in fact being that.