364 So.2d 566 (1978)
STATE of Louisiana
v.
Joseph B. RICHEY.
No. 61990.
Supreme Court of Louisiana.
November 13, 1978.
*567 Alton T. Moran, Director, Allen J. Bergeron, Jr., Appellate Counsel, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On December 29,1975, April 12,1976 and June 1, 1976, branch offices of the Louisiana National Bank in Baton Rouge were robbed by a black male who in each instance drove up to one of the bank's drive-in windows and gave the teller a note demanding certain denominations of bills. This demand was coupled in each instance with a threat to detonate electronically a bomb in twenty to thirty seconds. During the robbery of June 1,1976, the perpetrator attached the note to a simulated bomb made from a piece of wood wrapped in black tape and placed in the teller's drawer. Joseph Richey was arrested that evening and charged on June 2, 1976 with three counts of armed robbery, a violation of R.S. 14:64. After a trial by jury, he was found guilty as charged for the robbery of June 1, 1976 and guilty of simple robbery on the other two counts, R.S. 14:65. The trial judge thereafter sentenced him to five years imprisonment on each of the simple robbery convictions and to ninety-nine years imprisonment for the conviction for armed robbery, all sentences to run consecutively. On appeal defendant relies on one of the three assignments of error filed below for reversal of his conviction and sentence.[1]
*568 Assignment of Error No. 1
Defendant assigns as error the trial court's ruling admitting in evidence incriminating statements made to state and federal authorities on June 2, 1976. It is the defendant's contention that these statements were induced by the belief that he would be released to federal authorities to be prosecuted in the federal system, a belief engendered by certain statements made to him by Joseph A. Whitmore, the associate chief of security of Troop A of the Louisiana State Police. The defendant also claims that he was led to believe that his transfer was certain after he signed a request for transfer to the federal authorities. The record reveals that several years before the instant case Richey was convicted of armed robbery and sentenced to a thirty year term in the state penitentiary. In return for cooperation in the investigation of the death of a security guard, Richey was transferred from Angola to a work release program with the state police in Baton Rouge where he worked in the fleet operations light shop installing red lights and sirens on new automobiles to convert them into state police vehicles. Richey's interest in a transfer to federal jurisdiction therefore stemmed not only from a desire to be sentenced more leniently[2] but also from a fear for his life if he returned to Angola.
Before a confession can be admitted in evidence, the state has the burden of proving its voluntary nature beyond a reasonable doubt. State v. Bias, 352 So.2d 1011 (La.1977); State v. Glover, 343 So.2d 118 (La.1977); R.S. 15:451. To this effect the state put forward the testimony of F.B.I. agents Howard and Litchfield, in whose presence the defendant confessed to the three crimes. Agent Howard testified that the defendant was read and appeared to understand his Miranda rights, that he eventually signed the official F.B.I. waiver form, and afterwards confessed to the three robberies. Besides testifying that he made no threats, promises or inducements to secure the statements, agent Howard specifically denied on cross-examination that he had promised Richey that only federal charges would be pursued if he would sign the confessions. Although Howard admitted that he knew of the danger to the defendant if he returned to Angola, he would concede only that he told the defendant of the federal charges against him and that Richey was anxious for the United States attorney to know of the statements and of his willingness to plead guilty to all charges at the federal level. Agent Litchfield's testimony substantially corroborated that of Howard and included an unequivocal denial of any promises of exclusive federal prosecution.
At trial the defendant admitted the truth of the F.B.I. agents' testimony but insisted that he had signed a form releasing him from state to federal custody before he made the inculpatory statements. This form was furnished by Officer Whitmore, the defendant's supervisor at the work release program at State Police Headquarters. Although the form was entitled "Request for Transfer," Richey contends that Whitmore told him the form would effect a transfer to federal authority. When called on rebuttal, Whitmore admitted giving Richey the form, which he, however, described as a waiver of the right to a due process hearing before transfer from a minimum security facility to a maximum security one. However, Whitmore's testimony does indicate that he did convey some misinformation to the defendant:
". . . It was my understanding that the crime that he committed was a Federal crime insofar as I was concerned it would be transferred over to Federal authorities for the disposition.
Q And you told him that?
A Yes sir I did."
"Q Now had anybody told you this? *569 A Well sir according to the F.B.I. agents who worked the case they didn't come right and say we are going to try him in Federal Court. They did indicate that to me that they would charge him and took this to mean that it would be handled by the Federal authorities, any further disposition on the case.
Q And you conveyed this information to Joseph Richey?
A Yes sir I did."
The defense alleges that the confessions resulted from a collusive working relationship between state and federal officials which tainted not only the confessions made to the F.B.I. agents but also subsequent confessions made to state officers. In brief the state responds that the defense reliance on the working relationship doctrine is misplaced. Moreover, the state argues that any false impression created by Officer Whitmore was ineffective to render the confessions involuntary because he had no authority to order a transfer to federal jurisdiction and, in any event, did not take the statements himself.
The source of the "working relationship" rule is Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943), a companion case to McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). In McNabb, the Supreme Court held inadmissible a confession secured on the basis of an unreasonable delay in bringing the defendant before a magistrate, a violation of Rule 5(a) of the Federal Rules of Criminal Procedure. Anderson is a logical extension of the McNabb holding in that it holds confessions inadmissible if they were secured by state officials acting in collusion with federal authorities. The cases relied on in brief by the defense, United States v. Hathorn, 451 F.2d 1337 (5th Cir. 1971); United States v. Jackson, 448 F.2d 539 (5th Cir. 1971); and Kulyk v. United States, 414 F.2d 139 (5th Cir. 1969), deal with similar situations and are therefore inapposite to the instant prosecution.
However, we cannot accept the state's interpretation of State v. Rogers, 324 So.2d 403 (La.1975), as holding that a promise made to a criminal defendant must come from one authorized to make such a promise in order to render involuntary a confession secured thereby. Although we noted in Rogers that the consent of the district attorney would have been necessary to dismiss state charges, our holding was limited to a finding that the evidence did not bear out the defendant's assertion that he had received assurances that state charges would be dropped. Moreover, the state's argument that replacing the inducer of the confession with another party cleanses the taint of involuntariness is without support in the jurisprudence. State v. Glover, supra, establishes that the central determination of voluntariness is whether the statements are the product of the defendant's free and rational choice. The intervention of new officers along the chain from arrest to confession is merely a factor to be considered in determining the confession's voluntary nature and in no way is dispositive of the matter.
The voluntariness of a confession is a question of fact for the trial judge, and his conclusions on the credibility of the witnesses and the weight of the testimony concerning its voluntariness should not be disturbed on appeal unless unsupported by the evidence. State v. Henry, 352 So.2d 643 (La.1977); State v. Ross, 343 So.2d 722 (La. 1977). Although Officer Whitmore relayed some misinformation to the defendant, there is ample evidence to support the trial judge's conclusion that the confessions were free and voluntary and not made under the influence of inducements or promises. The mere fact that misinformation has been relayed to the defendant does not automatically render involuntary any subsequent statement made by him. State v. Cotton, 341 So.2d 355 (La.1976). The record indicates that Richey, who had two years of college at the University of Pennsylvania, was motivated to confess by his desire to be prosecuted at the federal level to the exclusion of state charges. On the other hand, there is no evidence, beyond the defendant's conjectures, of any collusive arrangement between Officer Whitmore and the F.B.I. agents.
*570 Finally it must be noted that at trial the defendant took the stand and admitted his perpetration of all three crimes. Richey testified that he was "a minnow among big fish" in a conspiracy within the state police to discredit the commander and force his resignation. To this end he was instructed to commit a series of robberies for which he would be captured. His confessions, Richey explained, were "to put pressure on the state police." Defendant's own testimony belies his contention that the confessions were induced by false promises.
The conviction and sentence are affirmed.
NOTES
[1] Assignments of error neither briefed nor argued on appeal are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La. 1978); State v. Lewis, 353 So.2d 703 (La. 1977).
[2] Under 18 U.S.C. § 2113(a) and (d), defendant faced a maximum penalty of twenty-five years imprisonment on each bank robbery charge. Under R.S. 14:64, he could receive up to ninety-nine years of imprisonment for each offense and a minimum of five years.